**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| ANTHONY ALLEN LEMAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-1082 (RJL) |
| | ) |
| | ) |
| | ) |
| BUREAU OF ALCOHOL, TOBACCO, | ) |
| FIREARMS & EXPLOSIVES, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

_____ )

## THE REMAINING FOUR FEDERAL DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, the remaining four federal

defendants,[1] the Federal Bureau of Investigation ("FBI"), the Federal Bureau of Prisons

("BOP"), the Internal Revenue Service ("IRS") and the United States Marshals Service

("USMS") hereby file their motion for dismissal, or alternatively summary judgment. Because

plaintiff has failed to exhaust his administrative remedies concerning his requests to each of

these four remaining defendants, dismissal is required. Alternatively, summary judgment is

appropriate because there are no material issues of fact in dispute and the evidence shows that

plaintiff has failed to exhaust his administrative remedies and that the BOP and the USMS have

each satisfied their obligations to plaintiff pursuant to the Freedom of Information Act, 5 U.S.C.

_____

[1]On September 20, 2007, six of the ten federal defendants filed their motion to dismiss or, in the alternative, for summary judgment. These defendants included the Bureau of Alcohol, Tobacco, Firearms and Explosives; the Drug Enforcement Administration; the Criminal Division of the United States Department of Justice; the United States Postal Service; the United States Department of Homeland Security; and the Executive Office for United States Attorneys. See Docket Entry No. 10.

§ 552 ("FOIA").

Plaintiff should take notice that any factual assertions contained in the accompanying affidavit and other attachments in support of defendants' motion will be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in defendants' attachments.  See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992); see also Local Rule 7(h)[2] and Fed. R. Civ. P. 56(e).  Fed. R. Civ. P. 56(e) provides that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

/s/ Jeffrey A. Taylor

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/ Rudolph Contreras

RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

---

[2]Requiring that oppositions to motions for summary judgment "shall" be accompanied by a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  LCvR 7(h).

/s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANTS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| ANTHONY ALLEN LEMAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-1082 (RJL) |
| | ) |
| | ) |
| | ) |
| BUREAU OF ALCOHOL, TOBACCO, | ) |
| FIREARMS & EXPLOSIVES, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

---

## THE REMAINING FOUR FEDERAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, the remaining four federal defendants, the Federal Bureau of Investigation ("FBI"), the Federal Bureau of Prisons ("BOP"), the Internal Revenue Service ("IRS") and the United States Marshals Service ("USMS") hereby file their motion for dismissal, or alternatively summary judgment. Because plaintiff has failed to exhaust his administrative remedies concerning his requests to each of these four remaining defendants, dismissal is required. Alternatively, should the Court look beyond the pleadings, summary judgment is appropriate because there are no material issues of fact in dispute and plaintiff has failed to exhaust his administrative remedies. Furthermore, the BOP and the USMS have each satisfied their obligations to plaintiff pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

## BACKGROUND

Plaintiff Anthony Allen Lemay is a federal prisoner currently housed at the United States Penitentiary located in Kentucky. Complaint ("Compl.") at 1. He has instituted this action

against ten separate federal agencies in regards to various requests he submitted pursuant to the

FOIA. The facts concerning the remaining four of these requests have been fully set forth in

defendants' Statement of Material Facts as to Which There is No Genuine Issue, attached to this

motion.

## ARGUMENT

**I.    Dismissal is Required Because Plaintiff Has Failed to Exhaust His Administrative Remedies in Regards to His Requests.**

### A.    Standard of Review

Defendants move for dismissal of plaintiff's complaint unde Rule 12(b)(6) for failure to

state a claim. "A FOIA suit is subject to dismissal under Rule 12(b)(6) of the Federal Rules of

Civil Procedure if a plaintiff fails to exhaust his administrative remedies prior to initiating a

lawsuit." Elliot v. United States Dep't of Agriculture, No. Civ.A. 06-240, 2007 WL 1302588, at

*2 (D.D.C. May 2, 2007). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the

legal sufficiency of a complaint. Atchinson v. District of Columbia, 73 F. 3d 418, 421 (D.C. Cir.

1996). A complaint may be dismissed for failure to state a claim upon which relief may be

granted, if the facts pled and reasonable inferences therefrom are legally insufficient to support

the relief requested. Appleton v. United States, 69 F. Supp. 2d 83, 86 (D.D.C. 1999); Sparrow

v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000). A court should dismiss a

complaint for failure to state a claim when the complaint fails "to raise a right to relief above the

speculative level." See, e.g., Bell Atlantic v. Twombly, 1275 S. Ct. 1955, 1956 (2007). The

court need not, however, accept as true the plaintiff's legal conclusions. See Taylor v. FDIC,

132 F.3d 753, 762 (D.C. Cir. 1997). "While in this Circuit, the exhaustion requirement is not

jurisdictional, . . . as a jurisprudential doctrine, failure to exhaust precludes judicial review if the

2

purposes of exhaustion and the particular administrative scheme support such a bar." <u>Bestor v.</u>
<u>C.I.A.</u>, No. Civ.A. 04-2049, 2005 WL 3273723, at *3 (D.D.C. Sept. 1, 2005) (citations and
internal quotation marks omitted).

**B.    <u>Plaintiff Has Failed to Exhaust His Administrative Remedies.</u>**

Prior to filing a lawsuit, a FOIA requester is required to fully exhaust his administrative
remedies. <u>Dettmann v. United States Dep't of Justice</u>, 802 F.2d 1472, 1477 (D.C. Cir. 1986). A
FOIA requester is deemed to have failed to exhaust administrative remedies whenever the
requester does not comply with the administrative process set forth under the FOIA, including:
(1) failure to provide the required proof of identity, <u>Summers v. United States Dep't of Justice</u>,
999 F.2d 570, 572-73 (D.C. Cir. 1993); (2) failure to reasonably describe the records being
sought, <u>Gillin v. IRS</u>, 980 F.2d 819, 822-23 (1ˢᵗ Cir. 1992); (3) failure to comply with fee
requirements, <u>Trueblood v. United States Dep't of Treasury</u>, 943 F. Supp. 64, 68 (D.D.C. 1996);
and (4) **failure to administratively appeal a denial of information**, <u>Oglesby v. United States</u>
<u>Dep't of the Army</u>, 920 F.2d 57 (D.C. Cir. 1990). Where a FOIA plaintiff attempts to obtain
judicial review without first properly undertaking full administrative exhaustion, his lawsuit is
subject to immediate dismissal. <u>Id.</u>

"The statutory scheme in the FOIA specifically provides for an administrative appeal
process following an agency's [response to] a FOIA request." <u>Bestor</u>, 2005 WL 3273723, at *2.
Furthermore, "[c]ourts have consistently confirmed that the FOIA requires exhaustion of this
appeal process <u>before</u> an individual may seek relief in the courts." <u>Id.</u> (citation and internal
quotation marks omitted) (emphasis added). Here, despite his unsupported assertions in his
complaint, plaintiff never filed any appeal regarding the FOIA requests he submitted to the FBI,

Ex. 1, Hardy Decl. ¶ 10; the BOP, Ex. 2, Massey Decl. ¶ 12; or the USMS, Ex. 4, Bordley Decl. ¶ 10. Because plaintiff has not filed administrative appeals of the agencies' responses to his respective FOIA requests, dismissal for failure to state a claim is required. Hinojosa v. Department of Treasury, No. Civ.A. 06-0215, 2006 WL 2927095, at *3 (D.D.C. Oct. 11, 2006) (holding that plaintiffs' "failure to avail themselves of the applicable administrative remedies is fatal to their [FOIA] claims in this Court."); Bestor, 2005 WL 3273723, at *4 ("Because the plaintiff has failed to justify the court's exercise of subject matter jurisdiction in this case, and likewise because plaintiff has failed to state a claim upon which relief can be granted, the defendant's motion to dismiss will be granted.").

Furthermore, as it concerns the IRS, it is apparent that plaintiff's appeal, which was filed over three months after he was requested to provide additional information to assist in searching for records responsive to his request, was not timely. See 26 C.F.R. § 601.702(c)(10)(I) (requiring that appeals be submitted within 35 days). "[E]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA which means that a requester under FOIA must file an administrative appeal within the time limit specified in agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response." Wilbur v. Central Intelligence Agency, 355 F.3d 675, 676 (D.C. Cir. 2004) (internal quotation marks and citation omitted). Because plaintiff's appeal was clearly beyond the 35-day time limit for properly appealing the IRS' September 21, 2006 letter, dismissal is required.

4

**II.     Defendants BOP and USMS Are Entitled to Summary Judgment.[1]**

**A.     Standard of Review**

In general, summary judgment is the procedural vehicle by which most FOIA actions are resolved.  See, e.g., Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified.").  While the defendant has the burden of proof on all material issues related to the merits of any claimed FOIA exemptions, summary judgment is to be freely granted where there are no material facts in dispute and the agency is entitled to judgment as a matter of law.  See, e.g., Alyeska Pipeline Serv. v. EPA, 856 F.2d 309, 314 (D.C. Cir. 1988); Hayden v. National Security Agency, 608 F.2d 1381, 1386-87 (D.C. Cir. 1979) (summary judgment appropriate in FOIA cases on the basis of affidavits).  Under the FOIA, which supplies the applicable substantive legal principles, defendant in this case bears the burden of proving three elements:

(1)     "**adequacy of the search**" -- that is, the search for responsive documents was adequate;

(2)     "**applicability of exemptions**" -- that is, the information withheld from release falls within an exemption from the FOIA's general requirement that information be released; and

(3)     "**reasonable segregability**" -- that is, the "reasonably segregable," non-exempt information has been disclosed after deletion of the exempt information.

See Public Employees for Environmental Responsibility v. United States Dep't of the Interior, No. Civ.A. 06-182, 2006 WL 3422484, at *8 (D.D.C. Nov. 28, 2006) (holding that agency had

---

[1]Defendants FBI and IRS only move for summary judgment to the extent it is necessary for the Court to look beyond the pleadings to consider their requests for dismissal based on plaintiff's failure to exhaust his administrative remedies.  See Fed. R. Civ. P. 12(b).  The FBI and IRS do not seek summary judgment as it concerns any substantive response to plaintiff's FOIA request.

"met its summary judgment burden by demonstrating that it fully discharged its FOIA obligations by conducting a reasonable and adequate search for documents, properly invoking applicable FOIA exemptions, and releasing all reasonably segregable factual materials from responsive documents.") (citations omitted).  See also NYC Apparel FZE v. United States Customs & Border Protection, 484 F. Supp. 2d 77, 86 (D.D.C. 2007) ("'[A]gency entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested has been produced . . . or is wholly[, or partially] exempt [from disclosure].'") (quoting Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001).   In this case, the BOP and the USMS have each fully discharged their obligations under the FOIA.

> **B.    The Agencies are Entitled to Summary Judgment Because Adequate Searches Were Performed.**

In responding to a FOIA request, an agency is under a duty to conduct a good faith search for responsive records, "using methods which can be reasonably expected to produce the information requested."  Oglesby v. United States Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (citations omitted); Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Services, 844 F. Supp. 770, 776 (D.D.C. 1993).  This "reasonableness" standard focuses on the method of the search, not its results.  Cleary, Gottlieb, 844 F. Supp. at 777 n.4 (citing Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). The search standards under the FOIA do not require an agency to prove that all responsive documents have been located.  Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (citation omitted).  Instead, "the search need only be reasonable; it does

6

not have to be exhaustive." <u>Miller v. Dep't of State</u>, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing

<u>Shaw v. Dep't of State</u>, 559 F. Supp. 1053, 1057 (D.D.C. 1983)).  An agency is not required to

search every record system, but need only search those systems in which it believes responsive

records are likely to be located.  <u>Oglesby</u>, 920 F.2d at 68.  Nor is there a requirement that the

search be perfect.  <u>Meeropol</u>, 790 F.2d at 956.  The fundamental question is not "'whether there

might exist any other documents responsive to the request, but rather whether the *search* for

those documents was *adequate*.'"  <u>Steinberg</u>, 23 F.3d at 551 (citation omitted).  "In

demonstrating the adequacy of the search, the agency may rely on reasonably detailed,

nonconclusory affidavits submitted in good faith."  <u>Weisberg v. Dep't of Justice</u>, 745 F.2d 1476,

1485 (D.C. Cir. 1984) (citations omitted).

 As set forth more fully in the pertinent declarations, a proper search for records, where

appropriate, was conducted.  Pertaining to the BOP, plaintiff's request was construed to seek the

FOIA exempt portions of his inmate central file, Judgment and Commitment file, and any

SIS/SIA files regarding him.  Ex. 2, Massey Decl. ¶ 9.  With the exception of his Central File,

which is available for plaintiff to review through his unit team, the relevant files were reviewed

and the non-exempt portions were released to plaintiff.  <u>Id.</u> ¶¶ 10-11.  As it concerns the USMS,

a search was conducted utilizing the systems of records routinely encompassed by a search for

prisoner records – the Prisoner Processing and Population Management/Prisoner Tracking

System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN),

JUSTICE/USM-007.  Ex. 4, Bordley Decl. ¶ 6.  These systems of records are searched by an

individual's name and/or personal identifier.  <u>Id.</u>  The WIN and PPM/PTS electronic records

revealed that plaintiff was arrested following the issuance of a warrant in the Western District of

North Carolina, Asheville Division, and housed in the Western District of North Carolina.  Id.
There are no USMS records indicating that plaintiff was ever investigated, arrested, or housed by
the USMS in Florida, and consequently, no records pertaining to plaintiff, were located by the
FOI/PA liaisons in the Middle, Northern, and Southern Districts of Florida.  Id.  As a result of
these systems of records searches by plaintiff's name and/or personal identifier, eighty-three (83)
pages of material indexed to plaintiff were located in the USMS district office.  Id.

Here, BOP and the USMS conducted searches in the locations most likely to contain
records responsive to plaintiff's request.  See, e.g., Neal v. Snow, No. Civ.A. 06-1124, 2007 WL
1169339, at *3 (D.D.C. Apr. 19, 2007) (holding that search was reasonable where, despite not
locating any records, agency's search was  "reasonable" and conducted where "responsive
records would likely have been located.").  The fact that no records were located by the USMS
in Florida does not render the search ineffective.  Trans Union LLC v. Federal Trade Comm'n,
141 F. Supp. 2d 62, 68 (D.D.C. 2001) ("[A]n agency's inability to locate every single responsive
[document] does not render an otherwise diligent search unreasonable.") (citations omitted).
Rather, the standard is whether the search was reasonably designed to discover responsive
records, if they existed.  The searches in this case meet that standard.  Landmark Legal
Foundation v. EPA, 272 F. Supp. 2d 59 (D.D.C. 2003) (holding that agency's search was
adequate where agency's search "was not confined to one office or region, [and agency]
searched all components of the agency.") (citation omitted).  Cf. Jackson v. United States
Attorney's Office, 293 F. Supp. 2d 34, 38 (D.D.C. 2003) (holding that search was inadequate
where declaration merely stated that declarant "reviewed the file" presented to him by the USAO
and failed to "explain what kind of search was conducted or [the] procedure followed by the

8

USAO to compile the documents which ultimately constituted the . . . file.").  Accordingly,

defendants BOP and the USMS are entitled to summary judgment.

### C.    THE BOP AND THE USMS HAVE PROPERLY INVOKED THE APPLICABLE FOIA EXEMPTIONS.

To meet its burden of demonstrating that a FOIA exemption applies, a defendant may

rely on affidavits or declarations and other evidence showing that the documents are exempt

from disclosure.  Hayden v. Nat'l Sec. Agency, 608 F.2d 1381, 1384, 1386-87 (D.C. Cir. 1979),

cert. denied, 446 U.S. 937 (1980).  Summary judgment may be granted solely on the basis of

agency affidavits or declarations if they "'afford the FOIA requester a meaningful opportunity to

contest, and the district court an adequate foundation to review, the soundness of the

withholding.'"  Campbell v. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998) (citation omitted).

See also Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995); Hayden, 608 F.2d at 1387;

Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

### 1.    BOP HAS PROPERLY INVOKED FOIA EXEMPTIONS 7(C) and 7(F).

BOP located 40 pages responsive to plaintiff's FOIA request.  Ex. 2, Massey Decl. ¶ 11.

Of the 40 pages, 13 were released in their entirety; 8 pages were partially released; and 19 pages

were withheld in their entirety.  Id.  Information was redacted or fully withheld on the basis of

FOIA Exemptions 7(C), and 7(F).

5 U.S.C. section 552(b)(7) provides that FOIA does not apply to "records or

information compiled for law enforcement purposes, but only to the extent that the production of

such law enforcement records or information . . . could reasonably be expected to constitute an

unwarranted invasion of personal privacy . . . [or] would disclose techniques and procedures for

law enforcement investigation . . . ." 28 U.S.C. § 4042 vests the BOP, under the direction of the

Attorney General, with the management and regulation of all federal penal and correctional

institutions, and the responsibility of maintaining them in a safe and secure manner.  Ex. 2,

Massey Decl. ¶ 26.  In order to carry out this critical mission, the BOP must collect and maintain

information concerning inmates that could impact the safe and secure operation of BOP

facilities, information such as that at issue in this case.  Id.  Thus, the BOP satisfies Exemption

7's initial requirement.

Exemption 7(C) exempts from mandatory disclosure under the FOIA information that has

been compiled for law enforcement purposes when disclosure "could reasonably be expected to

constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C); see Nation

Magazine v. United States Customs Serv., 71 F.3d 885, 896 (D.C. Cir. 1995); SafeCard Servs.,

Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991).[2]  Information was also held pursuant to

FOIA Exemption 7(F), which protects from disclosure records or information compiled for law

enforcement purposes, the disclosure of which could endanger the lives or physical safety of an

individual.  5 U.S.C. § 552(b)(7)(F).

The information withheld in this case was properly withheld pursuant to Exemptions

7(C) and 7(F).  This information included information regarding plaintiff's "special handling

---

[2]In relevant part, Exemption 7(C) provides:

> (7)  records or information compiled for law enforcement
> purposes, but only to the extent that the production of such law
> enforcement records or information . . . (C) could reasonably be
> expected to constitute an unwarranted invasion of personal
> privacy. . . .

5 U.S.C. § 552(b)(7)(C).

code," which contains the names of separatees from the plaintiff, and other documents that would reflect plaintiff's separatees.  Ex. 2, Massey Decl. ¶ 20.  Both exemptions were invoked to justify these withholdings.  As further set forth in the Massey declaration, in order to carry out its critical mission, the BOP must collect and maintain information concerning inmates that could impact the safe and secure operation of BOP facilities, information such as that at issue in this case.  Ex. 2, Massey Decl., ¶ 22.  In the day-to-day operation of a correctional institution, or during the course of an investigation, BOP staff discover information that could affect the safety and security of the institution.  Id. ¶ 22.  This information may include, but is not limited to, the fact that two inmates were involved in a fight; a threat by one inmate to another; misconduct on the part of another inmate, which may become known; and self-reports by inmates that they have had conflicts in the past with another inmate (if this information can be verified, then staff will separate the inmates).  Id.  In addition, while preparing for and prosecuting a criminal case, the Assistant United States Attorney will often become aware of information which can be valuable to law enforcement agencies who have the responsibility for the care and custody of these individuals, both pre-sentence and post-sentence.  Id. ¶ 23.  If these individuals are then incarcerated in the BOP, the Assistant United States Attorney provides information to the BOP regarding the need to separate certain individuals.  Id.  Inmates may need to be separated for many reasons, i.e., because one inmate testified against another which resulted in the inmate's conviction; the inmates could have been co-conspirators in planning an escape from prison or in the murder of a witness; or the inmates could have been involved in a fight while in jail together.  Id.  The information gathered concerning plaintiff's separations are critical to the safe and orderly running of BOP institutions, to the safety of the inmates involved, and in some instances,

11

to the safety of members of the public.  Id. ¶ 24.  The BOP is very careful not to release the names and identification of inmate separatees to other inmates or the general public.  Id. ¶ 27.  Such a release presents grave security concerns in the event inmates or associates of inmates obtain these separation instructions.  Id.  Release of this information creates a risk for the separatees and staff who may be involved if an altercation occurs.  Id.  See, e.g., Carbe v. Bureau of Alcohol, Tobacco & Firearms, No. Civ.A. 03-1658, 2004 WL 2051359, at *7 (D.D.C. Aug. 12, 2004) ("Just as informers and techniques are protected, so too does FOIA exempt disclosure of the identity of 'any individual' if release of that information 'could reasonably be expected to endanger [his or her] life or safety.'"); Anderson v. United States Marshals Service, 943 F. Supp. 37 (D.D.C. 1996) (holding that Exemption 7(C) was properly invoked to protect the names and register numbers of other prisoners and Exemption 7(F) was properly invoked to protect information regarding the "identity and location of an individual who required separation from the [p]laintiff.").

Visitor information was withheld pursuant to Exemption 7(C).  This was information concerning the name, date of birth, address, telephone number, race, sex, U.S. citizenship, social security numbers, alien registration number, passport number, relationship, criminal background, probation, correspondence with inmate, and driver's license of persons visiting plaintiff.  Ex. 2, Massey Decl. ¶¶ 36-38; 49-50; 53-55; 57-59.  Ten pages of NCIC reports, containing the social security numbers of persons waiting to be placed on plaintiff's visiting list were also withheld in full, in addition to one page of handwritten notes concerning one of the plaintiff's visitors that contained the name, date of birth, and criminal records of the visitor.  Id. ¶¶ 87, 91, 95.  As a law enforcement agency within the Department of Justice, all visitors to the BOP must complete this

12

visitor information form prior to approval.  Id.  ¶¶ 39-40.  The form permits/authorizes the BOP

to conduct a background investigation of the individual to determine whether the individual is

appropriate to be approved for visiting within the BOP visiting regulations and the secure

confines of a federal prison.  Id. ¶ 41.  To conduct this background investigation, BOP requires

the individual to provide personal/private information.  Id. ¶ 42.  The BOP has an obligation to

the person seeking visitation to insure that their name, addresses, social security numbers and

other personal data is held private.  Id. ¶ 43.  Release of the information to the prisoner places

the person at risk for identity theft, fraud, extortion, or violence if the visitors' names and

personal information are released to a prisoner, of if that information is lost by the inmate and

released to the general inmate population.  Id. ¶ 44.  This withholding was justified by

Exemption 7(C).  See, e.g. Romero-Cicle v. United States Dep't of Justice, No. Civ.A. 05-2303,

2006 WL 3361747, at *5 (D.D.C. Nov. 20, 2006) (Leon, J.) (holding that BOP properly invoked

Exemption 7(C) to withhold "portions of visitor information forms containing the birth dates,

addresses, social security numbers, possible contact with other inmates, and the criminal history

background checks of private individuals.") (citation omitted).

  In addition, information regarding plaintiff's Judgment and Commitment Order was

withheld pursuant to Exemption 7(F).  Ex. 2, Massey Decl. ¶¶ 99, 104.  As explained in the

Massey declaration, inmates are prohibited from possessing copies of their pre-sentence reports

(PSRs) and the Statement of Reasons (SOR) from their judgment(s) in a criminal case.  Id. ¶ 106;

see also BOP Program Statement 1351.05, dated September 19, 2002 (attached as Exhibit H to

the Massey declaration).[3]  The purpose of this prohibition is to protect inmates from being

coerced by other inmates to produce their PSRs and SORs for illicit purposes.  Id. ¶ 102.

Inmates will be permitted to review their PSRs and SORs, but cannot obtain or possess

photocopies.  Id.  This information was properly withheld from disclosure.  See, e.g., Carbe,

2004 WL 2051359, at *7 (D.D.C. Aug. 12, 2004) ("Just as informers and techniques are

protected, so too does FOIA exempt disclosure of the identity of 'any individual' if release of

that information 'could reasonably be expected to endanger [his or her] life or safety.'").

     One page of information was also withheld that consisted of a printout from the AIMS

systems and contained inmate nicknames.  Id. ¶ 109.[4]  This form/data system permits SIS staff to

match an inmate's real name with his prison or "street" nickname(s).  Id. ¶ 112.  This assists the

BOP and law enforcement in identifying specific inmates during the monitoring of inmate mail,

telephone calls, visitation or statements made in the general compound.  Id.  Inmates often use

nicknames within prison as a means of identification between other inmates and the community

while hiding their true identities from BOP staff or law enforcement.  Id.  Under the cover of

nicknames, inmates attempt to become involved in illegal or gang related activities within and

outside the prison without detection.  Id.  The disclosure of this information to plaintiff or to any

inmate jeopardizes the BOP's ability to monitor inmate activities since the disclosure of

information will inform the inmate that the BOP has the nickname that the inmates use.  Id. ¶

---

[3]Inmates are permitted to review copies of their PSRs and SORs, and it appears that plaintiff in this case was afforded that right.  Compl. Count VII, ¶ 4.

[4]This information was also withheld pursuant to 5 U.S.C. § 552(b)(5), which protects from disclosure "intra-agency or inter-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

113. Disclosure would frustrate the ability to monitor inmates and insure the safety of the public and the prison. Id. See, e.g., Anderson, 943 F. Supp. At 37 (holding that Exemption 7(F) was properly invoked to protect information regarding the "identity and location of an individual who required separation from the [p]laintiff.").[5]

**2.      USMS Has Properly Invoked FOIA Exemptions 2 and 7(C).**

The USMS released a total of seventy-eight (78) pages to plaintiff. Ex. 4, Bordley Decl. ¶ 8. Of these pages, forty-nine (49) have been released in their entirety and twenty-nine (29) have been released with redactions. Id. ¶ 9.

**Exemption 2**

FOIA Exemption 2 "protects from mandatory disclosure records 'related solely to the internal personnel rules and practices of an agency.'" Long v. United States Dep't of Justice, 450 F. Supp. 2d 42, 54 (D.D.C. 2006) (quoting 5 U.S.C. 552(b)(2)). To be encompassed within Exemption 2, the information must "be 'used predominately for internal purposes.'" Id. (citations omitted). Once this "threshold test" is met, an agency may properly withhold material

---

[5]Notably, this information would also be exempt from disclosure under Exemptions 2 and 7(E). Exemption 2 would apply because the information is used predominately for internal purposes, i.e., to permit SIS staff to match an inmates's real name with his prison or "street" nicknames and to assist BOP and law enforcement in identifying specific inmates during the monitoring of inmate mail, telephone calls, visitation, or statements made in the compound. Ex. 4, Bordley Decl. ¶ 112. Withholding the information is also permissible under Exemption 7(E). Exemption 7(E) protects from disclosure information "that would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To be exempt pursuant to Exemption 7(E), therefore, it must be shown that (1) the information was compiled for law enforcement purposes and (2) release of the information could be reasonably expected to circumvent the law. Duncan v. Drug Enforcement Admin., No. CIV.A. 06-1032, 2007 WL 1576316, at *7 (D.D.C. May 30, 2007) (citations omitted). Here, disclosure of the information would jeopardize BOP's ability to monitor inmate activities because it would inform the inmate that the BOP has the nicknames that the inmates use. Ex. 4, Bordley Decl. ¶ 112.

pursuant to Exemption 2 by showing "'that either (1) disclosure may risk circumvention of agency regulation, or (2) the material relates to trivial administrative matters of no genuine public interest.'" Id. (citations omitted). In this case, the USMS applied Exemption 2 to withhold information that would identify internal FedEx Air Bill account numbers assigned to USMS district offices to facilitate the billing and shipment of a prisoner's personal property. Ex. 4, Bordley Decl. ¶ 11. Disclosure of this information could allow individuals unauthorized access to and compromise the prisoner property account system and allow the public to circumvent procedures established for the billing and shipment of prisoner personal property and would present an opportunity for misuse and fraud. Id. These account numbers are used purely for internal USMS billing purposes and do not affect members of the public. Id. Thus, this information meets the test of being predominantly internal information as set forth in Crooker v. BATF, 670 F.2d 1051 (D.C. Cir. 1981). See also Changzhou Laosan Group v. United States Customs & Border Protection Bureau, No. Civ.A. 04-1919, 2005 WL 913268, at *3 (D.D.C. Apr. 20, 2005) (holding that "[i]nformation described as 'law enforcement investigation case name,' . . . clearly falls within the 'high (b)(2) category[ and] . . . is properly withheld under Exemption 2[,]" while information such as "computer function codes, internal file numbers, [and] computer system and report identity . . . are clearly documents that are predominately internal to the agency or are sufficiently related to a personnel rule or practice, and are therefore both easily discernable and properly withheld." ) (citation omitted); Putnam v. United States Dep't of Justice, 873 F. Supp. 705, 710 (D.D.C. 1993) (holding that "Exemption 2 may properly be invoked when the information withheld is used predominately for internal purposes and when release of the information risks circumvention of the law[,]" and FBI properly invoked

Exemption 2 to shield "symbols and numbers by which the FBI refers to informants in its internal files [which] is a matter [of] essentially internal significance and is of little public interest.") (citation omitted).  Because Exemption 2 was only used to withhold strictly internal pieces of information, the USMS  has properly invoked Exemption 2 in this instance.

### Exemption 7(C)

As previously discussed, supra at 9-10, Exemption 7(C) exempts from mandatory disclosure under the FOIA information that has been compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C); see Nation Magazine v. United States Customs Serv., 71 F.3d 885, 896 (D.C. Cir. 1995).  In this case, the USMS has invoked Exemption 7(C) to withhold the name of federal and non-federal law enforcement officers and other government employees. Ex. 4, Bordley Decl. ¶ 12.  Plaintiff has no public interest warranting disclosure of the names of these individuals, nor does the USMS believe that public disclosure of this information is warranted.  Id.  To the contrary, release of this information could subject these individuals to unwarranted public attention, harassment, and annoyance and would thereby impair the effectiveness of these employees in carrying out their official duties and potentially cause unwarranted attention to them in their private lives, as well as possibly posing a danger to their lives or physical safety.  Id.

A privacy interest sufficient to justify application of Exemption 7(C) has been found to exist in a wide variety of circumstances:  (1) the identities of suspects and witnesses who are

identified in agency records in connection with law enforcement investigations[6]; (2) the names of law enforcement officers who work on criminal investigations[7] and individuals who provide information to law enforcement authorities.[8]  All of these categories of individuals have protectable privacy interests in their anonymity. Withholding such information traditionally has been protected by courts because release would reveal nothing about the operations and activities of the government and could invade well-recognized privacy interests.  See, e.g., Manna v. United States Dep't of Justice, 51 F.3d 1158, 1166 (3d Cir. 1995), cert. denied, 516 U.S. 975 (1995); Jones v. FBI, 41 F.3d 238, 246-47 (6th Cir. 1994).  The same result is warranted here.

The USMS also relied on Exemption 7(C) to withhold information regarding third party individuals, including prisoners other than plaintiff.  Ex. 4, Bordley Decl. ¶ 13.  In reaching the decision to withhold personally identifiable information from documents released to plaintiff, the USMS considered whether or not there was a legitimate public interest in disclosure that would outweigh the individual's privacy interest in non-disclosure.  Id.  However, it is not readily apparent how information identifiable to prisoners other than plaintiff and other private individuals would satisfy any legitimate public need for information about the workings of our criminal justice system and the USMS could discern no legitimate public interest in the disclosure of this information. Id.  Release of this identifying information could expose the

---

[6]Reporters Committee for Freedom of the Press v. United States Dep't of Justice, 816 F.2d 730, 740-41 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996).

[7]Davis v. United States Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. United States Dep't of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980).

[8]Computer Prof'ls, 72 F.3d at 904; Farese v. United States. Dep't of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).

18

individuals to unwarranted public attention, embarrassment, harassment, and annoyance for being associated with an official criminal law enforcement matter.  Id. In the absence of any public interest in the release of this information, the USMS' withholding was proper.  See, e.g., Albuquerque Publishing Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation).

### D.    All Reasonably Segregable Material Has Been Released.

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Central, Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  The agency must provide a "detailed justification" to demonstrate that all reasonably segregable information has been released, id. at 261, and show "with reasonable specificity" why protected information cannot be further segregated.  Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  The Government can meet its burden of demonstrating that all reasonable segregable information has been released by means of affidavits or declarations.  See, e.g., Armstrong, 97 F.3d at 578 (affirming district court's finding that the agency had met its burden on the "reasonable segregability" issue, court stated:  "The government affidavits provided here show with "reasonable specificity" why the documents cannot be further segregated."); see Quinon v. Federal Bureau of Investigation, 86 F.3d 1222, 1227 (D.C. Cir.1996); Mead Data Central, 566 F.2d at 261.

Here, the BOP properly reviewed each of the records that were withheld either partially

19

or in full, and determined that the materials could not be further segregated. Ex. 2, Massey Decl.¶¶ 17, 29-30, 34, 37, 46, 50, 54, 58, 63, 65, 70, 75, 80, 85, 88, 92, 96, 108, 114. Similarly, for each of the redactions made by the USMS, the agency has set forth the nature of the information that has been redacted from disclosure. Ex. 4, Bordley Decl. ¶ 14. No documents were withheld in their entirety. Id. ¶ 15. These declarations demonstrate that the BOP and the USMS carefully reviewed the documents for segregability, and that all segregable portions of the documents have been released to plaintiff.

## CONCLUSION

For the reasons set forth above, the four remaining federal defendants respectfully request that this action be dismissed, or alternatively, that judgment as a matter of law be entered in their favor.

Respectfully submitted,

/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

/s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Four Remaining Federal Defendants' Motion to

Dismiss, or in the Alternative, for Summary Judgment and the accompanying exhibits was

mailed by depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

Anthony Allen Lemay
R 18194-058
Big Sandy
United States Penitentiary
Inmate Mail/Parcels
P.O. Box 2068
Inez, KY 41224

on this 1st  day of October, 2007.


_____
                              /s/
                    MICHELLE N. JOHNSON

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY ALLEN LEMAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-CV-1082 (RJL) |
| | ) |
| BUREAU OF ALCOHOL, TOBACCO, | ) |
| FIREARMS AND EXPLOSIVES, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C.  I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law.  In that capacity, I had direct oversight of Freedom of Information ("FOIA") policy, procedures, appeals, and litigation for the Navy.  From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters.  I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)    In my official capacity as Section Chief, I supervise approximately 216 employees who staff a total of ten (10) FBIHQ units and a field operational service center unit whose

collective mission is to effectively plan, develop, direct and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and other Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the Freedom of Information/Privacy Act ("FOIPA") requests of plaintiff Anthony Allen Lemay which seek access to records pertaining to himself at FBIHQ and the FBI's Charlotte Field Office ("CEFO").

(4)     The purpose of this declaration is to provide the Court and plaintiff with an explanation of the administrative history of the handling of plaintiff's FOIPA request. This declaration is submitted in support of defendant's motion to dismiss or in the alternative for summary judgment based on plaintiff's failure to exhaust administrative remedies.

## PROCEDURAL HISTORY OF PLAINTIFF'S FOIPA REQUEST TO FBIHQ[1]

---

[1]The purpose of the procedural history provided in this and the following section is simply to inform the court of the correspondence between plaintiff and the FBI and is not intended to address the issue of the adequacy of the FBI's search in response to plaintiff's request.

(5)    By letter dated August 23, 2006 to FBIHQ, plaintiff submitted a FOIPA request for records pertaining to himself. Plaintiff specifically stated: "I request a copy of any and all documents, records and information that any part of your agency has or had in its possession that is in any way connected to, or even remotely in reference to my name or the subject matter briefly described below: ALL RECORDS. Search the Central Office and all Field Offices in North Carolina. Search all See Reference Files. Search the I Files also. Also, search all field offices in Florida." Additionally plaintiff advised that he would pay all reasonable search and reproduction fees and provided a declaration of identity. **(See Exhibit A.)**

(6)    By letter dated September 19, 2006, FBIHQ advised plaintiff that a search of the automated indices to the Central Records System ("CRS") at FBIHQ located no main files responsive to his FOIPA request on himself (Request Number 1058606-000). The FBI also advised plaintiff of his right to file an administrative appeal to the Department of Justice ("DOJ"), Office of Information and Privacy ("OIP"). **(See Exhibit B.)**

## PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA/PA REQUEST TO CEFO

(7)    By letter dated September 8, 2006 addressed to the FBI in Ashville (sic), North Carolina, a resident agency[2] of the CEFO, plaintiff submitted a FOIPA request for records pertaining to himself. Plaintiff specifically stated: "I request a copy of any and all documents, records and information that any part of your agency has or had in its possession that is in any

---

[2] Along with the 56 field offices centrally located in major metropolitan areas across the United States and Puerto Rico, the FBI maintains about 400 resident agencies in smaller cities and towns across the nation. In this case, Charlotte is the field office and Asheville is a resident agency of that field office.

way connected to, or even remotely in reference to my name or the subject matter briefly described below: ALL RECORDS includes I-Files and "See Reference" files." Additionally plaintiff advised that he would pay all reasonable search and reproduction fees and provided a declaration of identity. **(See Exhibit C.)**

(8)    By letter dated October 18, 2006, FBIHQ advised plaintiff that a search of the CRS at the CEFO located no main files responsive to his FOIPA request on himself (Request Number 1058606-001)[3]. The FBI also advised plaintiff of his right to file an administrative appeal to the DOJ/OIP. **(See Exhibit D.)**

(9)    By letter dated November 3, 2006, FBIHQ again advised plaintiff that a search of the CRS at the CEFO located no main files responsive to his FOIPA request on himself. This second response to plaintiff's CEFO request was assigned a new FOIPA Request Number 1061951-000. The FBI also advised plaintiff of his right to file an administrative appeal to the DOJ/OIP. **(See Exhibit E.)**

(10)    In preparation for this declaration, FBIHQ contacted OIP to determine if it had received any appeals. OIP advised that it has no record of plaintiff ever filing an administrative appeal stemming from FBIHQ's response letters to plaintiff dated September 19, 2006, October 18, 2006, and November 3, 2006. Therefore, plaintiff has failed to exhaust the

---

[3]The "001" designation indicates that plaintiff's prior request was administratively closed and re-opened when his subsequent request was received. **(See Exhibit D.)** This was an error, as the field office request (actually made to the Asheville resident agency) should have been given a new FOIPA Request Number. The error was corrected with the letter of November 3, 2006. **(See Exhibit E.)** In summary, there are only two requests at issue, plaintiff's request to Headquarters dated August 23, 2006. **(See Exhibit A.)** and his request to the Asheville Resident Agency dated September 7, 2006 treated as a CEFO request. **(See Exhibit C.)**

administrative remedies available to him prior to filing this complaint.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that **Exhibits A through E** attached hereto are true and correct copies.

Executed this 24th day of September, 2007.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
   Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

-5-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANTHONY ALLEN LEMAY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 07-CV-1082 (RJL) |
| v. | ) | |
| | ) | |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS AND EXPLOSIVES, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# EXHIBIT A

**FOIA REQUEST**

To: Director                              Date: August 23, 2006
Federal Bureau of Investigation
J. Edgar Hoover Building
Washington, D. C. 20535

Dear Sir:

This is a request under the Freedom of Information Act.
I request a copy of any and all documents, records and informatio
that any part of your agency has or had in its possession that is in
any way connected to, related to, or even remotely in reference to
my name or the subject matter briefly described below:

ALL RECORDS. Search the Central Office and all Field Offices in
North Carolina. Search all See Reference Files. Search the I Files
also. Also, search all field offices in Florida.

I will pay reasonable search and reproduction fees.
My Biographical data is as follows:
FULL NAME: ANTHONY ALLEN LEMAY
DATE OF BIRTH   November █████████
PLACE OF BIRTH Bartow, Florida USA
SOCIAL SECURITY NUMBER ████████

I declare (or certify, verify, or state) under the penalty of
perjury that the foregoing is true and correct.

Executed on this 23rd day of August        , 2006.

By X _Anthony LeMay_
            Affiant/Declarant Herein

(28 USC Section 1746)

Name: ANTHONY LEMAY

Reg. No. 18194-058

United States Penitentiary
Box 2068
INEZ, Kentucky 41224

cc : file

INMATE NAME: Anthony Lemay
REGISTER NUMBER: 18194-058

U.S.P. BIG SANDY
P.O. BOX 2068
INEZ, KY 41224

Director
Federal Bureau of Investigation
J. Edgar Hoover Mail Services #32
Washington, D.C.

20535



Opened & Inspected

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY ALLEN LEMAY,                          )
                                              )
            Plaintiff                         )
                                              )
                                              )   Civil Action No. 07-CV-1082 (RJL)
        v.                                    )
                                              )
BUREAU OF ALCOHOL, TOBACCO,                   )
        FIREARMS AND EXPLOSIVES, et al.,      )
                                              )
            Defendants.                       )
                                              )

# EXHIBIT B



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

September 19, 2006

MR. ANTHONY ALLEN LEMAY
**18194-058
UNITED STATES PENITENTIARY
POST OFFICE BOX 2068
INEZ, KY 41224

Request No.: 1058606- 000
Subject: LEMAY, ANTHONY ALLEN

Dear Mr. Lemay:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

To promptly respond to requests, we concentrate on identifying main files in the central records system at FBI Headquarters. No records responsive to your FOIPA request were located by a search of the automated indices.

You may file an administrative appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

Enclosed for your information is a copy of the FBI File Fact Sheet.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

# FBI FILE FACT SHEET

- The primary function of the FBI is law enforcement.
  **The FBI does not keep a file on every citizen of the United States.**

- **The FBI was not established until 1908 and we have very few records prior to the 1920's.**

- **FBI files generally contain reports** of FBI investigations of a wide range of matters, including counterterrorism, foreign counter-intelligence, organized crime/drugs, violent crime, white-collar crime, applicants, and civil rights.

- **The FBI does not issue clearances or nonclearances for anyone other than its own personnel or persons having access to FBI facilities.** Background investigations for security clearances are conducted by many different Government agencies. Persons who received a clearance while in the military or employed with some other government agency should write directly to that entity.

- **An FBI identification record or "rap sheet" is NOT the same as an FBI "file"** - it is simply a listing of information taken from fingerprint cards submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. The subject of a "rap sheet" may obtain a copy by submitting a written request to FBI, CJIS Division, Attn: SCU, Mod. D-2, 1000 Custer Hollow Road, Clarksburg, West Virginia 26306. Each request must have proof of identity which shall consist of **name, date and place of birth and a set of rolled-ink fingerprint impressions** placed upon fingerprint cards or forms commonly utilized for applicant or law enforcement purposes by law enforcement agencies, plus **payment of $18.00** in the form of a certified check or money order, payable to the Treasury of the United States.

- **The National Name Check Program (NNCP)** conducts a search of the FBI's Universal Index to identify _any_ information contained in FBI records that may be associated with an individual and provides the results of that search to the requesting Federal, State or local agency. For the NNCP, a name is searched in a multitude of combinations and phonetic spellings to ensure all records are located. The NNCP also searches for both "main" and "cross reference" files. A main file is an entry that carries the name corresponding to the subject of a file while a cross reference is merely a mention of an individual contained in a file. The results from a search of this magnitude can result in several "hits" and "idents" on an individual. In each instance where UNI has identified a name variation or reference, information must be reviewed to determine whether it is applicable to the individual in question.

- **The Record/Information Dissemination Section/Freedom of Information-Privacy Acts (FOIPA)** search for records provides copies of FBI files relevant to a FOIPA request for information. FOIPA provides responsive documents to requesters seeking "reasonably described information." For a FOIPA search, the subject name, event, activity, business, or event is searched to determine whether there is an investigative file associated with the subject. This is called a "main file search" and differs from The NNCP search.

**FOR GENERAL INFORMATION ABOUT THE FBI,
CHECK OUT OUR WEBSITE AT
http://www.fbi.gov**

3-23-04

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY ALLEN LEMAY,          )
                              )
          Plaintiff           )
                              )
     v.                       ) Civil Action No. 07-CV-1082 (RJL)
                              )
BUREAU OF ALCOHOL, TOBACCO,   )
     FIREARMS AND EXPLOSIVES, et al.,  )
                              )
          Defendants.         )

# EXHIBIT C

*CE*

**FOIA REQUEST**

To: Special Agent In Charge                    Date: September 8, 2006

Federal Bureau of Investigation

151 Patton Ave.

Ashville, North Carolina  28801


Dear Sir:

This is a request under the Freedom of Information Act.
I request a copy of any and all documents, records and information
that any part of your agency has or had in its possession that is in
any way connected to, related to, or even remotely in reference to
my name or the subject matter briefly described below:

ALL RECORDS includes I-Files and "See Reference" files.


I will pay reasonable search and reproduction fees.

My Biographical data is as follows:

FULL NAME: ANTHONY ALLEN LEMAY

DATE OF BIRTH    November ▓▓▓▓▓

PLACE OF BIRTH Bartow, Florida USA

SOCIAL SECURITY NUMBER ▓▓▓▓▓▓▓

I declare (or certify, verify, or state) under the penalty of
perjury that the foregoing is true and correct.

Executed on this  8th  day of September        ,  2006.

By X _Anthony Le Tmay_
                     Affiant/Declarant Herein

(28 USC Section 1746)


Name:  ANTHONY LEMAY

Reg. No.   18194-058

United States Penitentiary
Box 2068
INEZ, Kentucky  41224


cc : file

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANTHONY ALLEN LEMAY, | ) |
|  | ) |
|  | ) |
|       Plaintiff | ) |
|  | ) Civil Action No. 07-CV-1082 (RJL) |
|       v. | ) |
|  | ) |
| BUREAU OF ALCOHOL, TOBACCO, | ) |
|       FIREARMS AND EXPLOSIVES, et al., | ) |
|  | ) |
|       Defendants. | ) |
|  | ) |

# EXHIBIT D



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

MR. ANTHONY ALLEN LEMAY                                    October 18, 2006
**18194-058
UNITED STATES PENITENTIARY
POST OFFICE BOX 2068
INEZ, KY 41224

Request No.: 1058606- 001
Subject: LEMAY, ANTHONY ALLEN

Dear Requester:

   This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above which was forwarded from the Charlotte Field Office to FBI Headquarters for processing.

   To promptly respond to requests, we concentrate on identifying main files in the central records system at the Charlotte Field Office . No records responsive to your FOIPA request were located by a search of the automated indices.

   You may file an administrative appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

   Enclosed for your information is a copy of the FBI File Fact Sheet.

                                                  Sincerely yours,

                                                  David M. Hardy
                                                  Section Chief,
                                                  Record/Information
                                                     Dissemination Section
                                                  Records Management Division

Enclosure

# FBI FILE FACT SHEET

- The primary function of the FBI is law enforcement.
  **The FBI does not keep a file on every citizen of the United States.**

- **The FBI was not established until 1908 and we have very few records prior to the 1920's.**

- **FBI files generally contain reports of FBI** investigations of a wide range of matters, including counterterrorism, foreign counter-intelligence, organized crime/drugs, violent crime, white-collar crime, applicants, and civil rights.

- **The FBI does not issue clearances or nonclearances for anyone other than its own personnel or persons having access to FBI facilities.** Background investigations for security clearances are conducted by many different Government agencies. Persons who received a clearance while in the military or employed with some other government agency should write directly to that entity.

- **An FBI identification record or "rap sheet" is NOT the same as an FBI "file"** - it is simply a listing of information taken from fingerprint cards submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. The subject of a "rap sheet" may obtain a copy by submitting a written request to FBI, CJIS Division, Attn: SCU, Mod. D-2, 1000 Custer Hollow Road, Clarksburg, West Virginia 26306. Each request must have proof of identity which shall consist of **name, date and place of birth and a set of rolled-ink fingerprint impressions** placed upon fingerprint cards or forms commonly utilized for applicant or law enforcement purposes by law enforcement agencies, plus **payment of $18.00** in the form of a certified check or money order, payable to the Treasury of the United States.

- **The National Name Check Program (NNCP)** conducts a search of the FBI's Universal Index to identify <u>any</u> information contained in FBI records that may be associated with an individual and provides the results of that search to the requesting Federal, State or local agency. For the NNCP, a name is searched in a multitude of combinations and phonetic spellings to ensure all records are located. The NNCP also searches for both "main" and "cross reference" files. A main file is an entry that carries the name corresponding to the subject of a file while a cross reference is merely a mention of an individual contained in a file. The results from a search of this magnitude can result in several "hits" and "idents" on an individual. In each instance where UNI has identified a name variation or reference, information must be reviewed to determine whether it is applicable to the individual in question.

- **The Record/Information Dissemination Section/Freedom of Information-Privacy Acts (FOIPA)** search for records provides copies of FBI files relevant to a FOIPA request for information. FOIPA provides responsive documents to requesters seeking "reasonably described information." For a FOIPA search, the subject name, event, activity, business, or event is searched to determine whether there is an investigative file associated with the subject. This is called a "main file search" and differs from The NNCP search.

**FOR GENERAL INFORMATION ABOUT THE FBI,**
**CHECK OUT OUR WEBSITE AT**
**http://www.fbi.gov**

3-23-04

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY ALLEN LEMAY,                  )
                                      )
            Plaintiff                 )
                                      )
      v.                              )   Civil Action No. 07-CV-1082 (RJL)
                                      )
BUREAU OF ALCOHOL, TOBACCO,           )
      FIREARMS AND EXPLOSIVES, et al., )
                                      )
            Defendants.               )
                                      )

# EXHIBIT E



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

MR ANTHONY ALLEN LEMAY                           NOVEMBER 3, 2006
**18194-058
BOX 2068
INEZ, KY 41224

Request No.: 1061951- 000
Subject: LEMAY, ANTHONY ALLEN

Dear Requester:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above which was forwarded from the Charlotte Field Office to FBI Headquarters for processing.

To promptly respond to requests, we concentrate on identifying main files in the central records system at the Charlotte Field Office. No records responsive to your FOIPA request were located by a search of the automated indices.

You may file an administrative appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

Enclosed for your information is a copy of the FBI File Fact Sheet.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

# FBI FILE FACT SHEET

- The primary function of the FBI is law enforcement.
  **The FBI does not keep a file on every citizen of the United States.**

- **The FBI was not established until 1908 and we have very few records prior to the 1920's.**

- **FBI files generally contain reports** of FBI investigations of a wide range of matters, including counterterrorism, foreign counter-intelligence, organized crime/drugs, violent crime, white-collar crime, applicants, and civil rights.

- **The FBI does not issue clearances or nonclearances for anyone other than its own personnel or persons having access to FBI facilities.** Background investigations for security clearances are conducted by many different Government agencies. Persons who received a clearance while in the military or employed with some other government agency should write directly to that entity.

- **An FBI identification record or "rap sheet" is NOT the same as an FBI "file"** - it is simply a listing of information taken from fingerprint cards submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. The subject of a "rap sheet" may obtain a copy by submitting a written request to FBI, CJIS Division, Attn: SCU, Mod. D-2, 1000 Custer Hollow Road, Clarksburg, West Virginia 26306. Each request must have proof of identity which shall consist of **name, date and place of birth and a set of rolled-ink fingerprint impressions** placed upon fingerprint cards or forms commonly utilized for applicant or law enforcement purposes by law enforcement agencies, plus **payment of $18.00** in the form of a certified check or money order, payable to the Treasury of the United States.

- **The National Name Check Program (NNCP)** conducts a search of the FBI's Universal Index to identify **any** information contained in FBI records that may be associated with an individual and provides the results of that search to the requesting Federal, State or local agency. For the NNCP, a name is searched in a multitude of combinations and phonetic spellings to ensure all records are located. The NNCP also searches for both "main" and "cross reference" files. A main file is an entry that carries the name corresponding to the subject of a file while a cross reference is merely a mention of an individual contained in a file. The results from a search of this magnitude can result in several "hits" and "idents" on an individual. In each instance where UNI has identified a name variation or reference, information must be reviewed to determine whether it is applicable to the individual in question.

- **The Record/Information Dissemination Section/Freedom of Information-Privacy Acts (FOIPA)** search for records provides copies of FBI files relevant to a FOIPA request for information. FOIPA provides responsive documents to requesters seeking "reasonably described information." For a FOIPA search, the subject name, event, activity, business, or event is searched to determine whether there is an investigative file associated with the subject. This is called a "main file search" and differs from The NNCP search.

**FOR GENERAL INFORMATION ABOUT THE FBI,
CHECK OUT OUR WEBSITE AT
http://www.fbi.gov**

3-23-04

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


ANTHONY LEMAY,                    )
                                 )
            PLAINTIFF,           )
                                 )
        v.                       )CIVIL ACTION NO.: 1:07-cv-01082-RJL
                                 )
BUREAU OF ALCOHOL, TOBACCO)
 FIREARMS & EXPLOSIVES,          )
 ET AL.,                         )
            DEFENDANTS.          )


## DECLARATION OF SHARON MASSEY

    1.   I, Sharon Massey, do hereby declare that I am a Legal
Instruments Examiner ("LIE")assigned to the Consolidated Legal
Center, ("CLC") Lexington, Kentucky of the Bureau of Prisons
(BOP). I have held this position since May 10, 1998.

    2.   As a Legal Instruments Examiner I have access to
official files and records maintained regarding inmates presently
or previously confined in an institution within CLC Lexington's
jurisdiction, including the electronic database known as SENTRY.
In addition, I have access to the Freedom of Information request
files maintained in the Consolidated Legal Center, Lexington,
Kentucky.

3.    Anthony Allen LeMay, Federal Register No. 18194-058, is incarcerated at the United States Penitentiary("USP")in Big Sandy, Kentucky. Plaintiff was sentenced in the United States District Court for the Western District of North Carolina to a LIFE sentence for violation of 18 U.S.C. § 841 & 846 "Conspiracy to Possess With Intent To Distribute Cocaine base. **See Attachment A for a true and accurate copy of inmate Public Information Inmate SENTRY printout.** I have reviewed a copy of the Complaint filed in this case.

## FOIA REQUEST 2006-10257

4.    On September 6, 2006, the Freedom of Information Division of the Federal Bureau of Prisons, Central Office, Washington, D.C., received and forwarded to CLC Lexington, a Freedom of Information ("FOIA")letter from the Plaintiff. **See Attachment B for a true and accurate copy of Mr. LeMay's request.**

5.    The Central Office FOIA/PA Section forwarded the request to CLC Lexington and it was received on or about September 15, 2006, and forwarded to USP Big Sandy. **See Attachment C for a true and accurate copy of the September 15, 2006, memorandum to USP Big Sandy.**

6.     The Plaintiff's Freedom of Information ("FOIA") letter requested, "All records search the USP Big Sandy, SIS[1], SIA[2], and FOIA Exempt Files[3], Central File and ISM[4] Files." **See Attachment B for a true and accurate copy of Mr. LeMay's request.**

7.     CLC Lexington assigned this request FOIA number 2006-10257.

---

[1]SIS stands for the Special Investigative Services.  This department handles all security investigations related to inmate activities. These investigations include gang issues, murders, assaults, gambling, drugs, contraband, sexual assaults, extortion, escape plots and continued criminal activities.  The department also works as a liaison with state and federal law enforcement agencies.

[2]The SIA stands for Special Investigative Agent.  He or she is the head of the SIS Department and handles SIS duties as well as issues related to employee misconduct or criminal activity. The SIA works with the BOP's Office of Internal Affairs, Office of Inspector General, and the Federal Bureau of Investigation.

[3]FOIA Exempt Section of the Central File refers to a section in an inmate's Central File which hold documents considered by the BOP to be too dangerous for an inmate to possess or review. The documents may contain seperatees, gang associations, cooperation with staff, criminal conduct, etc.

[4]ISM stands for the Inmate Systems Department. ISM handles inmate sentence computations and possesses an inmate's Judgement & Commitment Order(s) as well as any state or federal detainers.

8.    On September 19, 2006, CLC Lexington sent Mr. LeMay a letter acknowledging receipt of his request.  The letter also explained the perimeters of Mr. Lemay's request.  CLC Lexington did not receive a response to this letter and proceeded to search the records based upon the perimeters of this letter. **See Attachment D for a true and accurate copy of the September 19, 2006, letter.**

9.    On November 15, 2006, CLC Lexington responded to Mr. LeMay's FOI request no. 2006-10257.  The response stated, "You requested a copy of the FOI exempt portion of your inmate central file, Judgement & Commitment file, and any SIS/SIA files regrading yourself." **See Attachment E for a true and accurate copy of the September 22, 2006, letter.**

10.    An inmate's Central File is available for the inmate to review at any time with his Unit Team and an inmate may seek copies of the documents through his Unit Team.  The Central File, with the exception of certain FOIA Exempt materials is handled as a local release.

11.    Mr. LeMay was notified that CLC Lexington had located 40 pages responsive to his request.  Of the 40 pages, 13 pages were released in their entirety; 8 pages were partially released with redactions, and 19 pages were withheld in their entirety. **See Attachment E for a true and accurate copy of the September 22, 2006, letter.**

Page  -4-

12.   CLC Lexington recieved no information related to any appeal filed by Plaintiff with the Department of Justice Office of Information and Privacy ("OIP").

### RELEASED DOCUMENTS

13.   CLC Lexington released 13 pages in their entirety. **See Attachment F; Full Released Documents.**

### PARTIAL RELEASED DOCUMENTS

14.   CLC Lexington partially released 8 pages to the Plaintiff.

15.   The 8 pages released **See Attachment G,** with excisions which consist of the following:

16.   One (1) page entitled "Individual Custody And Detention Report USM (129)."

17.   The redacted sections contained information related to the Plaintiff's "Special Handling Code."

18.   The redactions were made pursuant to Title 5, United States Code, Section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

19.  The redaction was also made pursuant to 5 U.S.C. 552(b)(7)( C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

20.  The "Special Handling Remarks" contained the names of a separatees from the Plaintiff and security concerns for the U.S. Marshal's Service.

21.  Title 28 Code of Federal Regulations, § 524.72(f) states[5]:

Separation.  Inmates who may not be confined in the same institution (unless the institution has the ability to prevent any physical contact between the separatees) with other specified individuals who are presently housed in federal custody or who may come into federal custody in the future.  Factors to consider in classifying an individual to this assignment include, but are not limited to, testimony provided by or about an individual (in open court, to a grand jury, etc.), and whether the inmate has exhibited aggressive or intimidating behavior towards other specific individuals, either in the community or within the institution. This assignment also includes those inmates who have provided authorities with information concerning the unauthorized or illegal activities of others.  This assignment may also include inmates from whom there is no identifiable threat, but who are to be separated from others at the request of the Federal Judiciary or U.S. Attorneys.

---

[5]Inmates are only notified that they have a classification of "separation."  They are not told from whom they are being separated, why they are being separated, or (if outside law enforcement requested the separation) who requested the separation.

22.    In the day-to-day operation of a correctional institution or during the course of an investigation, BOP staff discover information that could affect the safety and security of the institution.  This information may include, but is not limited to, the fact that two inmates were involved in a fight; one inmate has threatened another inmate; an inmate provides staff information concerning misconduct on the part of another inmate and that information becomes known; an inmate may self-report to staff when he arrives at an institution that there is an inmate on the compound that he has had conflicts in the past (if this information can be verified, then staff will separate the inmates).

23.    In addition, while preparing for and then prosecuting a criminal case, the Assistant United States Attorney will often become aware of information which can be valuable to law enforcement agencies who have the responsibility for the care and custody of these individuals, both pre-sentence and post-sentence.  If these individuals are then incarcerated in the BOP, the Assistant United States Attorney provides information to the BOP regarding the need to separate certain individuals.  Inmates may need to be separated for many reasons, i.e., because one inmate testified against the other one which resulted in the inmate getting convicted; the inmates could have been co-conspirators in planning an escape while in jail together; the

inmates could have been co-conspirators while in jail planning to have a witness killed; the inmates could have been involved in a fight while in jail together, etc.

24. The information gathered concerning Inmate LeMay's separations are critical to the safe and orderly running of BOP institutions, to the safety of the inmates involved, and in some instances, to the safety of members of the public.

25. If inmates have been co-conspirators in the past the BOP's possession of this information permits the BOP to separate the inmates, thus to avoid further collusion on their part. This separation could protect the safety of not only BOP staff and inmates, but individuals in the community who provided information to law enforcement personnel or testified at trial.

26. In 28 U.S.C. § 4042 the Bureau of Prisons, under the direction of the Attorney General, is charged with the management and regulation of all Federal penal and correctional institutions, and maintaining them in a safe and secure manner. In order to carry out this critical mission, the BOP must collect and maintain information concerning inmates that could impact the safe and secure operation of BOP facilities, information like that at issue in this case.

27. The BOP is very careful not to release the names and identification of inmate seperatees to other inmates or the general public. Such a release presents grave security concerns

in the event inmates or associates of inmates obtain these separation concerns.  Release of this information creates a risk for the seperatees and staff who may be involved if an altercation occurs.

28.  One (1) page entitled "CIM Clearance and Seperatee Data."

29.  The redactions were made pursuant to Title 5, United States Code, Section 552(b)(7) (F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

30.  The redaction was also made pursuant to 5 U.S.C. 552(b)(7)( C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

31.  The rationale outlined in paragraphs 21-27, apply to this redaction.

32.  One (1) page entitled "CIM Clearance and Seperatee Data."

33.   The redactions were made pursuant to Title 5, United States Code, Section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

34.   The redaction was also made pursuant to 5 U.S.C. 552(b)(7)(C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

35.   The rationale outlined in paragraphs 21-27, apply to this redaction.

36.   One (1) page entitled "Visitor Information."

37.   The redactions were the Legal Name, Date of Birth, Address, Telephone number, Race & Sex, U.S. Citizenship, Social Security Number, Alien Registration Number, Passport Number, Relationship, Criminal Background, Probation, Correspondence with Inmate, and Driver's License.

38.   The redaction was made pursuant to 5 U.S.C. 552(b)(7)(C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

39.   The Federal Bureau of Prisons is considered a law enforcement agency within the Department of Justice.

40.   As a law enforcement agency tasked with the operation of the federal prison system, all visitors must complete this Visitor Information form prior to approval.

41.   The form permits/authorizes the BOP to conduct a background investigation of the individual to determine whether the individual is appropriate to be approved for visiting within the BOP visiting regulations and the secure confines of a federal prison.

42.   To conduct this background investigation, the BOP requires the individual to provide the BOP with personal/private information for the review as outlined above.

43.   The BOP has an obligation to the person seeking visitation to insure their names, addresses, social security numbers and other personal data are held private.

44.   Release of this information to a prisoner places the person at risk for identity theft, fraud, extortion, or violence, if their names and personal information are released to a prisoner, or if that information is lost by the inmate and released to the general inmate population.

45.   One (1) page entitled "Visitor Information."

46.    The redactions were the Legal Name, Date of Birth, Address, Telephone number, Race & Sex, U.S. Citizenship, Social Security Number, Alien Registration Number, Passport Number, Relationship, Criminal Background, Probation, Correspondence with Inmate, and Driver's License.

47.    The redaction was made pursuant to 5 U.S.C. 552(b)(7) ( C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

48.    The rationale outlined in paragraphs 39-44, apply to this redaction.

49.    One (1) page entitled "Visitor Information."

50.    The redactions were the Legal Name, Date of Birth, Address, Telephone number, Race & Sex, U.S. Citizenship, Social Security Number, Alien Registration Number, Passport Number, Relationship, Criminal Background, Probation, Correspondence with Inmate, and Driver's License.

51.    The redaction was made pursuant to 5 U.S.C. 552(b)(7) ( C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

52.   The rationale outlined in paragraphs 39-44, apply to this redaction.

53.   One (1) page entitled "Visitor Information."

54.   The redactions were the Legal Name, Date of Birth, Address, Telephone number, Race & Sex, U.S. Citizenship, Social Security Number, Alien Registration Number, Passport Number, Relationship, Criminal Background, Probation, Correspondence with Inmate, and Driver's License.

55.   The redaction was made pursuant to 5 U.S.C. 552(b)(7)( C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

56.   The rationale outlined in paragraphs 39-44, apply to this redaction.

57.   One (1) page entitled "Visitor Information."

58.   The redactions were the Legal Name, Date of Birth, Address, Telephone number, Race & Sex, U.S. Citizenship, Social Security Number, Alien Registration Number, Passport Number, Relationship, Criminal Background, Probation, Correspondence with Inmate, and Driver's License.

59.   The redaction was made pursuant to 5 U.S.C. 552(b)(7)
( C), which exempts from disclosure records or information
complied for law enforcement purposes which would constitute a
clearly unwarranted invasion of personal privacy surrounding
other individuals.

60.   The rationale outlined in paragraphs 35-39, apply to
this redaction.

**PAGES WITHHELD**

61.   The pages withheld in full consist of the following:

62.   One (1) page entitled "CIM Case Information Summary."
This document contains information related to the Plaintiff's
Separatees.

63.   The redaction was made pursuant to 5 U.S.C. 552(b)(7)
( C), which exempts from disclosure records or information
complied for law enforcement purposes which would constitute a
clearly unwarranted invasion of personal privacy surrounding
other individuals.

64.   The page was also withheld pursuant to Title 5, United
States Code, Section 552(b)(7)(F), which provides for the
withholding of records or information compiled for law
enforcement purposes which could endanger the lives or physical
safety of an individual.

65.  The page was reviewed to see if certain information was excised whether the remaining portion of any page could be released.  The review determined the page cannot reasonably and meaningfully be segregated.

66.  The rationale outlined in paragraphs 21-27, apply to this redaction.

67.  One (1) page an electronic message from the Plaintiff's Unit Team to the U.S. Attorney's Office which has a list of Plaintiff's separatees.

68.  The redaction was made pursuant to 5 U.S.C. 552(b)(7) ( C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

69.  The page was also withheld pursuant to Title 5, United States Code, Section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

70.  The page was reviewed to see if certain information was excised whether the remaining portion of any page could be released.  The review determined the page cannot reasonably and meaningfully be segregated.

71.  The rationale outlined in paragraphs 21-27, apply to this redaction.

72.  One (1) page an electronic message from the U.S. Attorney's Office to the Plaintiff's Unit Team which has a list of Plaintiff's separatees.

73.  The redaction was made pursuant to 5 U.S.C. 552(b)(7)( C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

74.  The page was also withheld pursuant to Title 5, United States Code, Section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

75.  The page was reviewed to see if certain information was excised whether the remaining portion of any page could be released.  The review determined the page cannot reasonably and meaningfully be segregated.

76.  The rationale outlined in paragraphs 21-27, apply to this redaction.

77.  One (1) page an electronic message from two BOP Case Management Coordinators which has a list of Plaintiff's separatees.

78.  The redaction was made pursuant to 5 U.S.C. 552(b)(7)
( C), which exempts from disclosure records or information
complied for law enforcement purposes which would constitute a
clearly unwarranted invasion of personal privacy surrounding
other individuals.

79.  The page was also withheld pursuant to Title 5, United
States Code, Section 552(b)(7)(F), which provides for the
withholding of records or information compiled for law
enforcement purposes which could endanger the lives or physical
safety of an individual.

80.  The page was reviewed to see if certain information was
excised whether the remaining portion of any page could be
released.  The review determined the page cannot reasonably and
meaningfully be segregated.

81.  The rationale outlined in paragraphs 21-27, apply to
this redaction.

82.  One (1) page an electronic message from a BOP Case
Management Coordinator which has a list of Plaintiff's
separatees.

83.  The redaction was made pursuant to 5 U.S.C. 552(b)(7)
( C), which exempts from disclosure records or information
complied for law enforcement purposes which would constitute a
clearly unwarranted invasion of personal privacy surrounding
other individuals.

84.   The page was also withheld pursuant to Title 5, United States Code, Section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

85.   The page was reviewed to see if certain information was excised whether the remaining portion of any page could be released.   The review determined the page cannot reasonably and meaningfully be segregated.

86.   The rationale outlined in paragraphs 21-27, apply to this redaction.

87.   Six (6) pages of NCIC reports which contain the social security numbers of people requesting to be placed on the Plaintiff's visiting list.

88.   The page was reviewed to see if certain information was excised whether the remaining portion of any page could be released.   The review determined the page cannot reasonably and meaningfully be segregated.

89.   The redaction was made pursuant to 5 U.S.C. 552(b)(7)( C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

90. The rationale outlined in paragraphs 39-44, apply to this redaction.

91. One (1) page of handwritten notes concerning one of Plaintiff's visitors. The notes contain the name, date of birth and criminal records of the visitor.

92. The page was reviewed to see if certain information was excised whether the remaining portion of any page could be released. The review determined the page cannot reasonably and meaningfully be segregated.

93. The redaction was made pursuant to 5 U.S.C. 552(b)(7)( C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

94. The rationale outlined in paragraphs 39-44, apply to this redaction.

95. Four (4) pages of NCIC reports which contain the social security numbers of people requesting to be placed on the Plaintiff's visiting list as well as criminal convictions associated with the social security numbers.

96. The pages were reviewed to see if certain information was excised whether the remaining portion of any pages could be released. The review determined the pages cannot reasonably and meaningfully be segregated.

97.   The redaction was made pursuant to 5 U.S.C. 552(b)(7)
( C), which exempts from disclosure records or information
complied for law enforcement purposes which would constitute a
clearly unwarranted invasion of personal privacy surrounding
other individuals.

98. The rationale outlined in paragraphs 39-44, apply to
this redaction.

99.   One (1) page consisted of the Plaintiff's Judgement and
Commitment Order, which was entitled "Statement of Reasons" and
stated, "not for public disclosure."

100. The page was withheld pursuant to Title 5, United
States Code, Section 552(b)(7)(F), which provides for the
withholding of records or information compiled for law
enforcement purposes which could endanger the lives or physical
safety of an individual.

101. BOP Program Statement 1351.05, dated September 19,
2002, and entitled *Release of Information,* prohibits inmates from
obtaining and possessing photocopies of their Pre-sentence
Reports (PSR) and the Statement of Reasons (SOR) from their
Judgment(s) in a Criminal Case. **See Attachment H; Program
Statement 1351.05, Summary of Changes & pg. 15.**

102. The purpose of this prohibition is to protect inmates from being coerced by other inmates to produce their PSRs and SORs for illicit purposes.  Inmates will be permitted to review their PSRs and SORs, but cannot obtain or possess photocopies.

103. The page was reviewed to see if certain information was excised whether the remaining portion of any page could be released.  The review determined the page cannot reasonably and meaningfully be segregated.

104. One page One (1) page consisted of the Plaintiff's Judgement and Commitment Order, which was entitled "Confidential Not For Public Disclosure" and contains the Plaintiff's name, home address, social security number and date of birth.

105. The page was withheld pursuant to Title 5, United States Code, Section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

106. BOP Program Statement 1351.05, dated September 19, 2002, and entitled *Release of Information,* prohibits inmates from obtaining and possessing photocopies of their Pre-sentence Reports (PSR) and the Statement of Reasons (SOR) from their Judgment(s) in a Criminal Case. **See Attachment H; Program Statement 1351.05, Summary of Changes & pg. 15.**

107. The purpose of this prohibition is to protect inmates from being coerced by other inmates to produce their PSRs and SORs for illicit purposes. Inmates will be permitted to review their PSRs and SORs, but cannot obtain or possess photocopies.

108. The page was reviewed to see if certain information was excised whether the remaining portion of any page could be released. The review determined the page cannot reasonably and meaningfully be segregated.

109. One (1) page consisted of database (AIMS system) printout entitled "Nicknames" used to track inmate nicknames while housed in the BOP.

110. The page was withheld pursuant to Title 5, United States Code, Section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

111. The page was also withheld pursuant to Title 5, United States Code, Section 552(b)(5), which allows exemption of information intended for staff use only, the disclosure of which would tend to inhibit frank communication between prison officials, or correspondence that is speculative or deliberative in nature. This exemption protects information which would not be available by law to a party other than an agency in litigation with that agency.

112. This form/data system permits SIS staff to match an inmate's real name with his prison or "street" nickname(s). This assists the BOP and law enforcement in identifying specific inmates during the monitoring of inmate mail, telephone calls, visitation or statements made in the general compound. Inmates often use nicknames within prison as a means of identification between other inmates and the community, while hiding their true identities from BOP staff or law enforcement. Under the cover of nicknames, inmates attempt to become involved in illegal or gang related activities within and outside the prison without detection.

113. The disclosure of this information to the Plaintiff or any inmate jeopardizes the BOP's ability to monitor inmate activities, since the disclosure will inform the inmate the BOP has the nickname(s) the inmate use. Disclosure would frustrate the ability to monitor inmates and insure the safety of the public and the prison.

114. The page was reviewed to see if certain information was excised whether the remaining portion of any page could be released. The review determined the page cannot reasonably and meaningfully be segregated.

115. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 21ST day of August 2007.


*Sharon Massey*

Sharon Massey, Legal Instruments Examiner
Consolidated Legal Center
Federal Bureau of Prisons
Lexington, Kentucky 40511

**ATTACHMENT A**

```
   LEXZ2          *          PUBLIC INFORMATION          *     08-20-2007
 PAGE 001         *              INMATE DATA             *     08:09:26
                                AS OF 08-20-2007

REGNO..: 18194-058 NAME: LEMAY, ANTHONY ALLEN

                    RESP OF: BSY / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 606-433-2400    FAX: 606-433-2577
                                             RACE/SEX...: WHITE / MALE
FBI NUMBER.: 510195WA3                       DOB/AGE....: ▬▬▬▬▬▬▬/ 31
PROJ REL MT: LIFE                            PAR ELIG DT: N/A
PROJ REL DT: LIFE                            PAR HEAR DT:
-------------------------- ADMIT/RELEASE HISTORY ----------------------------
 FCL    ASSIGNMENT DESCRIPTION                START DATE/TIME STOP  DATE/TIME
 BSY    A-DES      DESIGNATED, AT ASSIGNED FACIL 05-06-2004 1801 CURRENT
 S40    RELEASE    RELEASED FROM IN-TRANSIT FACL 05-06-2004 1801 05-06-2004 1801
 S40    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-06-2004 0630 05-06-2004 1801
 ATL    HLD REMOVE HOLDOVER REMOVED              05-06-2004 0630 05-06-2004 0630
 ATL    A-HLD      HOLDOVER, TEMPORARILY HOUSED   05-03-2004 1943 05-06-2004 0630
 2-D    RELEASE    RELEASED FROM IN-TRANSIT FACL 05-03-2004 1943 05-03-2004 1943
 2-D    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-12-2004 1015 05-03-2004 1943
 CRL    ADMIN REL  ADMINISTRATIVE RELEASE        04-12-2004 1015 04-12-2004 1015
 CRL    A-ADMIN    ADMINISTRATIVE ADMISSION      04-12-2004 1009 04-12-2004 1015
 CUM    UNCOMT RMV UNCOMMITTED CASE REMOVED      03-19-2004 1439 04-12-2004 1009
 CUM    A-UNCOMMIT UNCOMMITTED PERSON            03-19-2004 1437 03-19-2004 1439




 G0002        MORE PAGES TO FOLLOW . . .
```

```
LEXZ2              *       PUBLIC INFORMATION      *      08-20-2007
PAGE 002           *          INMATE DATA          *      08:09:26
                            AS OF 08-20-2007
```

REGNO..: 18194-058 NAME: LEMAY, ANTHONY ALLEN

```
                   RESP OF: BSY / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 606-433-2400    FAX: 606-433-2577
```
THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE

----------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

```
COURT OF JURISDICTION...........: NORTH CAROLINA, WESTERN DISTRICT
DOCKET NUMBER...................: 1:02CR105-6
JUDGE...........................: THORNBURG
DATE SENTENCED/PROBATION IMPOSED: 02-23-2004
DATE COMMITTED..................: 05-06-2004
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                  FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00         $00.00          $00.00        $00.00
```

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

-----------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....:  381
OFF/CHG: 21:841 & 846; CONSP TO PWITD COCAINE BASE; CT-1.

```
  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.: LIFE
  TERM OF SUPERVISION............:      5 YEARS
  DATE OF OFFENSE................: 01-01-2001
```

G0002       MORE PAGES TO FOLLOW . . .

```
   LEXZ2         *          PUBLIC INFORMATION        *     08-20-2007
PAGE 003 OF 003 *            INMATE DATA              *     08:09:26
                           AS OF 08-20-2007

REGNO..: 18194-058 NAME: LEMAY, ANTHONY ALLEN

                    RESP OF: BSY / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 606-433-2400   FAX: 606-433-2577
-------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 06-01-2004 AT BSY AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 02-23-2004
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
EARLIEST DATE OF OFFENSE........: 01-01-2001

JAIL CREDIT.....................:  FROM DATE     THRU DATE
                                   12-17-2002    03-28-2003
                                   02-16-2004    02-22-2004

TOTAL PRIOR CREDIT TIME.........: 109
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 0
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: N/A
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: LIFE


PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE




S0055     NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

**ATTACHMENT B**

06. 10257

MXno

To:  Director                          **FOIA REQUEST**

Federal Bureau of Prisons                      Date:  August 24, 2006

320 First Street, NW

Washington, D. C.  20534

RECEIVED

SEP 0 6 2006

FOIA/PA SECTION
FEDERAL BUREAU OF PRISON

Dear Sir:

This is a request under the Freedom of Information Act.
I request a copy of any and all documents, records and informati
that any part of your agency has or had in its possession that is in
any way connected to, related to, or even remotely in reference to
my name or the subject matter briefly described below:
ALL RECORDS.   Search the USP Big Sandy, SIS, SIA and FOIA Exempt
Files, Central File and ISM files.

I will pay reasonable search and reproduction fees.
My Biographical data is as follows:

FULL NAME:  ANTHONY ALLEN LEMAY

DATE OF BIRTH    November ▓▓▓▓▓▓

PLACE OF BIRTH  Bartow, Florida USA

SOCIAL SECURITY NUMBER  ▓▓▓▓▓▓▓

I declare (or certify, verify, or state) under the penalty of
perjury that the foregoing is true and correct.

Executed on this 24th day of August                , 2006.

By X _____
        Affiant/Declarant Herein

(28 USC Section 1746)

Name:  ANTHONY LEMAY

Reg. No. _____18194-058_____

United States Penitentiary
Box 2068
INEZ, Kentucky  41224

cc : file

**ATTACHMENT C**

UNITED STATES GOVERNMENT
# MEMORANDUM
*Federal Medical Center*
*Consolidated Legal Center*
*3301 Leestown Road*
*Lexington, Kentucky 40511-8799*

**September 15, 2006**

## MEMORANDUM FOR BEVERLY STARK, LEGAL LIAISON
## USP BIG SANDY, KY

**FROM:**     **Joseph C. Tang, Supervisory Attorney**
                  **Consolidated Legal Center**

**SUBJECT:**             **Request for Records**

The following records have been requested by letter to this office.  Please duplicate the requested records and forward them to the Consolidated Legal Center at Lexington, Kentucky,  within ten (10) working days.  Please attach a copy of this letter to the requested records before mailing.  **If the total amount of pages exceed 350, please notify us first before copying.**  If you have any questions, please do not hesitate to contact me at 859-255-6812 X 5119.

LEMAY, Anthony, Reg. No. 18194-058, FOIA #2006–10257

SIS/SIA files regarding Lemay
FOI Exempt portion of inmate central file
J&C file (don't send PSI)

[Inmate requesting]

**ATTACHMENT D**



**UNITED STATES GOVERNMENT**
**Federal Bureau of Prisons**
*Federal Medical Center*
*Consolidated Legal Center*
*3301 Leestown Road*
*Lexington, Kentucky 40511-8799*

September 19, 2006

Anthony Lemay, Reg. No. 18194-058
United States Penitentiary - Big Sandy
Post Office Box 2068
Inez, Kentucky 41224-2068

Re: FOIA/PA Request No. 2006-10257

Mr. Lemay:

This letter is to acknowledge your request for Federal Bureau of Prisons records has been received in this office. In accordance with Title 28, Code of Federal Regulations, Section 16.3, your request has been forwarded to the Consolidated Legal Center, Lexington, Kentucky.

You have requested a copy of any SIS/SIA files pertaining to yourself, the FOI Exempt portion of your inmate central file, copy of your central file and of your ISM file.

We will request copies of the FOI exempt portion of your inmate central file and the Judgement and Commitment record. We will also request any SIS/SIA files pertaining to you. We will review these records and make a determination if any portion thereof are releasable to you. Your inmate central file is available for your review at USP Big Sandy. You may request copies of your central file by submitting an Inmate Request to Staff Member to your unit team. Within a reasonable time after your request, staff will provide personal copies of requested documents. Fees for copies will be calculated in accordance with Title 28 C.F.R. § 16.11. Although fees are assessed at ten cents ($0.10) per page, Title 28 C.F.R. § 16.11(c)(2) provides that the first 100 pages are released at no charge to the requester.

The foregoing is not a denial of access to records.

FOIA requests are processed on a "first-in first-out" basis. You will be hearing from us in the near future regarding the processing of your request.

Under subpart © of 28 C.F.R. § 16.3 the filing of your request is deemed to constitute an agreement to pay all applicable fees charged under 28 C.F.R. § 16.11 up to $25.00. Although fees are assessed at ten cents ($0.10) per page, Title 28 C.F.R. § 16.11(c)(2) provides that the first 100 pages are released at no charge to the requester. The cost for staff time involved in searching and reviewing these documents will be assessed in accordance with Title 28, CFR § 16.11(c)(1) and (d)(2). You will be notified of any charges associated with your request.

Please address any concerns regarding this request to Consolidated Legal Center, Federal Medical Center, 3301 Leestown Road, Lexington, Kentucky 40511-8799, and reference the above request number.

Sincerely,

Richard W. Schott
Regional Counsel

**ATTACHMENT E**



**UNITED STATES GOVERNMENT**
**Federal Bureau of Prisons**
*Federal Medical Center*
*Consolidated Legal Center*
*3301 Leestown Road*
*Lexington, Kentucky 40511-8799*

September 22, 2006

Anthony Lemay, Reg. No. 18194-058
United States Penitentiary - Big Sandy
Post Office Box 2068
Inez, Kentucky 41224-2068

Re:   FOIA/PA Request No. 2006–10257

Mr. Lemay

This is in response to your request for Federal Bureau of Prisons records. You requested a copy of the FOI exempt portion of your inmate central file, Judgement & Commitment file, and any SIS/SIA files regarding yourself.

We have located 40 pages responsive to your request for records. We have determined 13 pages are being released to you in full; 19 pages are being withheld in their entirety; and the remaining 8 pages have had information withheld. The withholding of information is pursuant to the following exemption(s):

> Title 5, United States Code, Section 552(b)(7)(C), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

> Title 5, United States Code, Section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

Pursuant to Title 28, Code of Federal Regulations, Section 16.8, this response may be appealed to the Attorney General by filing a written appeal within sixty days of the date of this letter. The appeal should be addressed to the Office of Information and Privacy, United States Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, DC 20530-0001. Both the envelope and the letter of appeal itself must be clearly marked: "Freedom of Information Act Appeal."

Sincerely,

Richard W. Schott
Regional Counsel

**ATTACHMENT F**

```
  BSY2C  540*23  *           SENTENCE MONITORING          *    06-01-2004
  PAGE 001        *           COMPUTATION DATA             *    15:06:25
                               AS OF 06-01-2004

  REGNO..: 18194-058 NAME: LEMAY, ANTHONY ALLEN


  FBI NO..........: 510195WA3          DATE OF BIRTH: ████████████
  ARS1............: BSY/A-DES
  UNIT............: A1/2               QUARTERS.....: A03-124L
  DETAINERS.......: NO                 NOTIFICATIONS: NO

  THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
  THE INMATE IS PROJECTED FOR RELEASE:  LIFE

  --------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

  COURT OF JURISDICTION..........: NORTH CAROLINA, WESTERN DISTRICT
  DOCKET NUMBER..................: 1:02CR105-6
  JUDGE..........................: THORNBURG
  DATE SENTENCED/PROBATION IMPOSED: 02-23-2004
  DATE COMMITTED.................: 05-06-2004
  HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
  PROBATION IMPOSED..............: NO

                  FELONY ASSESS  MISDMNR ASSESS  FINES          COSTS
  NON-COMMITTED.: $100.00        $00.00          $00.00         $00.00

  RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00

  --------------------CURRENT OBLIGATION NO: 010 -----------------------------
  OFFENSE CODE...:  381
  OFF/CHG: 21:841 & 846; CONSP TO PWITD COCAINE BASE; CT-1.

   SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
   SENTENCE IMPOSED/TIME TO SERVE.: LIFE
   TERM OF SUPERVISION............:      5 YEARS
   DATE OF OFFENSE................: 01-01-2001




   G0002       MORE PAGES TO FOLLOW . . .
```

```
   BSY2C  540*23 *            SENTENCE MONITORING           *     06-01-2004
PAGE 002 OF 002 *            COMPUTATION DATA              *     15:06:25
                             AS OF 06-01-2004

REGNO..: 18194-058 NAME: LEMAY, ANTHONY ALLEN


------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 06-01-2004 AT BSY AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 02-23-2004
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
EARLIEST DATE OF OFFENSE........: 01-01-2001

JAIL CREDIT.....................:     FROM DATE      THRU DATE
                                     12-17-2002     03-28-2003
                                     02-16-2004     02-22-2004

TOTAL PRIOR CREDIT TIME.........: 109
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 0
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: N/A
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: LIFE


PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE




G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

AO 245B (WDNC Rev. 2/01) Judgment in a Criminal Case

# United States District Court
## For The Western District of North Carolina

FILED
ASHEVILLE, N.C.

UNITED STATES OF AMERICA

V.

ANTHONY ALLEN LEMAY

JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number: 1:02cr105-6

U.S. DISTRICT COURT
W. DIST. OF N.C.

Reid Brown
Defendant's Attorney

THE DEFENDANT:

X  pleaded guilty to count(s) 1.
⊥  Pleaded nolo contendere to count(s) which was accepted by the court.
⎯  Was found guilty on count(s) after a plea of not guilty.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense(s):

| Title and Section | Nature of Offense | Date Offense Concluded | Counts |
|---|---|---|---|
| 21 USC 841, 846 | Conspiracy to possess w/intent to distirbute cocaine base, Sch. II | January, 2001 to the present | 1 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

⎯  The defendant has been found not guilty on count(s) .
⎯  Count(s) (is)(are) dismissed on the motion of the United States.

**IT IS ORDERED** that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay monetary penalties, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth: 11/4/75

Defendant's USM No.: 18194-058

Defendant's Mailing Address:
106 Rosman Highway
Rosman, NC 28772

Date of Imposition of Sentence: 2/23/04

Signature of Judicial Officer

Lacy H. Thornburg
United States District Judge

Date: 3-1-04

A True Copy, Teste:
Frank G. Johns, Clerk
By:
Deputy Clerk

AO 245B (WDNC Rev. 2/01) Judgment in a Criminal Case

Defendant: ANTHONY ALLEN LEMAY
Case Number: 1:02cr105-6

Judgment-Page 2 of 6

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of LIFE.

_X_ The Court makes the following recommendations to the Bureau of Prisons:
The Court calls to the attention of the custodial authorities that defendant has a history of substance abuse and recommends defendant be allowed to participate in any available substance abuse treatment programs while incarcerated pursuant to 18 USC 3621(e)(2). It is further ordered that defendant be required to support all dependents from prison earnings while incarcerated as outlined in the presentence report.

_X_ The defendant is remanded to the custody of the United States Marshal.

_ The defendant shall surrender to the United States Marshal for this district:

_ At ____ On ___.
_ As notified by the United States Marshal.

_ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

_ Before 2 pm on .
_ As notified by the United States Marshal.
_ As notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this Judgment as follows:

Defendant delivered on _5/6/04_ To _USP BSY_

At _Inez, KY_ , with a certified copy of this Judgment.

Davl Dove, Warden
~~United States Marshal~~

By **L. EVERAGE, LIE**
~~Deputy Marshal~~

Cc: USM
AWP

AO 245B (WDNC Rev. 2/01) Judgment in a Criminal Case

Defendant: ANTHONY ALLEN LEMAY    Judgment-Page 3 of 6
Case Number: 1:02cr105-6

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 5 Years.

The condition for mandatory drug testing is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.

## STANDARD CONDITIONS OF SUPERVISION

The defendant shall comply with the standard conditions that have been adopted by this court and any additional conditions ordered.

1. The defendant shall not commit another federal, state, or local crime.
2. The defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon.
3. The defendant shall pay any financial obligation imposed by this judgment remaining unpaid as of the commencement of the sentence of probation or the term of supervised release on a schedule to be established by the court.
4. The defendant shall provide access to any personal or business financial information as requested by the probation officer.
5. The defendant shall not acquire any new lines of credit unless authorized to do so in advance by the probation officer.
6. The defendant shall not leave the Western District of North Carolina without the permission of the Court or probation officer.
7. The defendant shall report in person to the probation officer as directed by the Court or probation officer and shall submit a truthful and complete written report within the first five days of each month.
8. A defendant on supervised release shall report in person to the probation officer in the district to which he or she is released within 72 hours of release from custody of the Bureau of Prisons.
9. The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
10. The defendant shall support his or her dependents and meet other family responsibilities.
11. The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other activities authorized by the probation officer.
12. The defendant shall notify the probation officer within 72 hours of any change in residence or employment.
13. The defendant shall refrain from excessive use of alcohol and shall not unlawfully purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as duly prescribed by a licensed physician.
14. The defendant shall participate in a program of testing and treatment or both for substance abuse if directed to do so by the probation officer, until such time as the defendant is released from the program by the probation officer; provided, however, that defendant shall submit to a drug test within 15 days of release on probation or supervised release and at least two periodic drug tests thereafter for use of any controlled substance, subject to the provisions of 18:3563(a)(5) or 18:3583(d), respectively.
15. The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.
16. The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.
17. The defendant shall submit his person, residence, office or vehicle to a search, from time to time, conducted by any U.S. Probation Officer and such other law enforcement personnel as the probation officer may deem advisable, without a warrant; and failure to submit to such a search may be grounds for revocation of probation or supervised release. The defendant shall warn other residents or occupants that such premises or vehicle may be subject to searches pursuant to this condition.
18. The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed by the probation officer.
19. The defendant shall notify the probation officer within 72 hours of defendant's being arrested or questioned by a law enforcement officer.
20. The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court.
21. As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.
22. If the instant offense was committed on or after 4/24/96, the defendant shall notify the probation officer of any material changes in defendant's economic circumstances which may affect the defendant's ability to pay any monetary penalty.

ADDITIONAL CONDITIONS:

AO 245B (WDNC Rev. 2/01) Judgment in a Criminal Case

Defendant: ANTHONY ALLEN LEMAY                                      Judgment-Page 4 of 6
Case Number: 1:02cr105-6

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the Schedule of Payments.

| ASSESSMENT | FINE | RESTITUTION |
|------------|------|-------------|
| $100.00 | $0.00 | $0.00 |

### FINE

    The defendant shall pay interest on any fine or restitution of more than $2,500.00, unless the fine or restitution is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on the Schedule of Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

__X__      The court has determined that the defendant does not have the ability to pay interest and it is ordered that:

__X__      The interest requirement is waived.

__  __      The interest requirement is modified as follows:

### COURT APPOINTED COUNSEL FEES

__X__      The defendant shall pay court appointed counsel fees.

__  __      The defendant shall pay $_____ Towards court appointed fees.

AO 245B (WDNC Rev. 2/01) Judgment in a Criminal Case

Defendant: ANTHONY ALLEN LEMAY
Case Number: 1:02cr105-6

Judgment-Page 5 of 6

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A  X  payable immediately; or

B  __  $ immediately, balance due (in accordance with C or D); or

C  __  Not later than ; or

D  X  in monthly installments of not less than $50.00 to commence 60 days after the release from imprisonment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. Probation Officer shall pursue collection of the amount due, and may request the court to establish or modify a payment schedule if appropriate 18 U.S.C. § 3572.

Special instructions regarding the payment of criminal monetary penalties:

__  The defendant shall pay the cost of prosecution.
__  The defendant shall pay the following court costs:
__  The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments are to be made to the United States District Court Clerk, 309 U.S. Courthouse, 100 Otis Street, Asheville, NC, 28801, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program. All criminal monetary penalty payments are to be made as directed by the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B (WDNC Rev. 2/01) Judgment in a Criminal Case

Defendant: ANTHONY ALLEN LEMAY
Case Number: 1:02cr105-6

Judgment-Page 6 of 6

### DENIAL OF FEDERAL BENEFITS
#### (For Offenses Committed On or After November 18, 1988)

**FOR DRUG TRAFFICKERS PURSUANT TO 21 U.S.C. § 862**

IT IS ORDERED that the defendant shall be:

X    ineligible for all federal benefits for a period of 5 Years, beginning this date.

___    Ineligible for the following federal benefits for a period of _____.

#### OR

___    Having determined that this is the defendant's third or subsequent conviction for distribution of controlled substances, IT IS ORDERED that the defendant shall be permanently ineligible for all federal benefits.

**FOR DRUG POSSESSORS PURSUANT TO 21 U.S.C. § 862(b)**

IT IS ORDERED that the defendant shall:

___    Be ineligible for all federal benefits for a period of _____.

___    Be ineligible for the following federal benefits for a period of _____.

___    Successfully complete a drug testing and treatment program.

___    Perform community service, as specified in the probation and supervised release portion of this judgment.

___    Having determined that this is the defendant's second or subsequent conviction for possession of a controlled substance, IT IS FURTHER ORDERED that the defendant shall complete any drug treatment program and community service specified in this judgment as a requirement for the reinstatement of eligibility for federal benefits.

Pursuant to 21 U.S.C. § 862(d), this denial of federal benefits does not include any retirement, welfare, Social Security, health, disability, veterans benefit, public housing, or other similar benefit, or any other benefit for which payments or services are required for eligibility. The clerk of court is responsible for sending a copy of this page and the first page of this judgment to :

U.S. Department of Justice, Office of Justice Programs, Washington, DC 20531

BP-S340.051  **NOTIFICATION OF CENTRAL INMATE MONITORING (CIM)**  CDFRM
AUG 95        **CLASSIFICATION OR DECLASSIFICATION**
**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

| NAME LEMAY, Anthony | REGISTER NUMBER 18194-058 |
|---|---|

| DATE 5-27-2004 | INSTITUTION U.S.P. Big Sandy |
|---|---|

☐ I. CLASSIFICATION

This is to advise you of your classification as a CIM Case. This classification does not preclude you from transfer, temporary release, or participation in community activities recommended by the Warden, but it requires review by the Regional and/or Central Office for such participation to occur. This classification will be reviewed (depending on your CIM assignment) by the Warden or Regional Office within 60 days to determined if a sound basis exists to continue you as a CIM case. You will be advised only if your classification changes as a result of this review.

You may submit any objections to this classification directly to the review authority (address available from Unit Staff). A CIM classification not changed in 60 days from date of this notification is final and may be appealed through the Administrative Remedy Procedure.

**A. CIM ASSIGNMENTS**

Separation

**B. RATIONALE FOR CLASSIFICATION**

Confidential documentation has been received which indicates the need to keep you separated from another individual or individuals during your term of confinement for mutual safety.

INMATE SIGNATURE _Anthony LeMay_

| TYPED NAME & SIGNATURE OF STAFF MEMBER Michael Bowling  _Michael Bowling_ | DATE 5-27-04 |
|---|---|

☐ II. DECLASSIFICATION

Rationale for removal.

INMATE SIGNATURE

| TYPED NAME & SIGNATURE OF STAFF MEMBER | DATE |
|---|---|

Record Copy - Central File; Copy - Regional Office (if Review Authority); Copy - Inmate

(This form may be replicated via WP)        **FOI EXEMPT**        Replaces BP-340(51) of MAY 94



U.S. Department of Justice
Federal Bureau of Prisons

*United States Penitentiary - Big Sandy*

*Office of the Warden*

P.O. Box 2067
Inez, Kentucky 41224

July 27, 2004


MEMORANDUM FOR DAN L. DOVE, WARDEN

FROM:    *michael zanding* For
         Gordon Harpe, A1/A2 Unit Manager

SUBJECT:  LEMAY, Anthony Allen
          Reg. No. 18194-058


Federal Bureau of Prisons' Program Statement 5180.04, Central
Inmate Monitoring System, designates the Chief Executive Officer
as the reviewing/approving official for Separation cases.

The above referenced inmate is classified in the Central Inmate
Monitoring (CIM) program with the assignment of Separation.
Please review the enclosed CIM Case Information Summary, BP-339,
the Notification of Central Inmate Monitoring (CIM)
Classification, BP-340, along with the supporting documentation
and advise us of your concurrence or non-concurrence with the
application of the Separation assignment in this case.


( ✓ ) Approve Final Separation Assignment

(   ) Disapprove Final Separation Assignment


Dan L. Dove, Warden


# FOI EXEMPT

*"Sensitive Limited Official Use Only"*

*** LIMITED OFFICIAL USE ***

DATE: 04/23/2004 TIME: 14:44 PAGE: 2

UNITED STATES MARSHALS SERVICE
PRISONER TRACKING SYSTEM
WESTERN NORTH CAROLINA
DISTRICT: 58    OFFICE: AVL

INDIVIDUAL CUSTODY AND DETENTION REPORT USM (129)

NAME: LEMAY, ANTHONY ALLEN
USMS NUMBER: 18194058

| 1 | WT-DESIG | 03/18/2004 | **/**/**** | **/**/**** |
| 1 | WT-MOVE  | 04/23/2004 | **/**/**** | **/**/**** |

IV. CHRONOLOGICAL PRISONER HISTORY

| INST CODE | INSTITUTION NAME | ADMIT DATE | RELEASE DATE | DAYS BOARDED | ACTION OR DISPOSITION |
|-----------|------------------|------------|--------------|--------------|-----------------------|
| 4FH | BUNCOMBE CO JAIL | 12/17/2002 | 02/28/2003 | 73 | |
| 4FY | SWAIN CO JAIL | 02/28/2003 | 03/06/2003 | 6 | |
| 4K4 | MCDOWELL COUNTY JAIL | 03/06/2003 | 03/28/2003 | 22 | |
| BND | ON BOND | 03/28/2003 | 02/16/2004 | 1 | |
| 4FH | BUNCOMBE CO JAIL | 02/16/2004 | 03/01/2004 | 14 | |
| 3VG | BURKE COUNTY JAIL | 03/01/2004 | 04/20/2004 | 50 | |
| 4JK | MECKLENBURG CO JAIL | 04/20/2004 | **/**/**** | 3 | TR USP BIG SANDY, KY |

TOTAL DAYS BOARDED    169

V. MEDICAL CONDITION/TREATMENT HISTORY

| DATE SERVICE PROVIDED | VENDOR | SERVICE PROVIDED |
|-----------------------|--------|------------------|
| **/**/**** | | |

THIS INFORMATION IS THE PROPERTY OF THE U.S. MARSHALS SERVICE AND SHALL NOT
BE PUBLICLY RELEASED OR DISSEMINATED WITHOUT U.S. MARSHALS SERVICE AUTHORITY.

****** END OF REPORT ******

*** LIMITED OFFICIAL USE ***

LEAVE BLANK | CRIMINAL | | | (STAPLE HERE) | | LEAVE BLANK

STATE USAGE

NFF SECOND

SUBMISSION | APPROXIMATE CLASS | AMPUTATION | SCAR

LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX

STATE USAGE

**LEMAY, Anthony Allen**

SIGNATURE OF PERSON FINGERPRINTED | SOCIAL SECURITY NO | LEAVE BLANK

ALIASES/MAIDEN
LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX

Andy Lemay

| FBI NO. 510195WA3 | STATE IDENTIFICATION NO. SID# NC 0717746A | DATE OF BIRTH  MM  DD  YY | SEX M | RACE W | HEIGHT 509 | WEIGHT 190 | EYES Haz | HAIR Bro |

1. R. THUMB | 2. R. INDEX | 3. R. MIDDLE | 4. R. RING | 5. R. LITTLE

6. L. THUMB | 7. L. INDEX | 8. L. MIDDLE | 9. L. RING | 10. L. LITTLE

LEFT FOUR FINGERS TAKEN SIMULTANEOUSLY | L. THUMB | R. THUMB | RIGHT FOUR FINGERS TAKEN SIMULTANEOUSLY

**FEDERAL BUREAU OF INVESTIGATION, UNITED STATES DEPARTMENT OF JUSTICE**
**CRIMINAL JUSTICE INFORMATION SERVICES DIVISION, CLARKSBURG, WV 26306**

PRIVACY ACT OF 1974 (P.L. 93-579) REQUIRES THAT FEDERAL, STATE, OR LOCAL AGENCIES INFORM INDIVIDUALS WHOSE SOCIAL SECURITY NUMBER IS REQUESTED WHETHER SUCH DISCLOSURE IS MANDATORY OR VOLUNTARY, BASIS OF AUTHORITY FOR SUCH SOLICITATION, AND USES WHICH WILL BE MADE OF IT.

| DATE OF ARREST | ORI | | CONTRIBUTOR ADDRESS | KY000017C US PEN-BIG SANDY INEZ, KY |
| --- | --- | --- | --- | --- |

| SUBMISSION | YES ☐ | | | |
| TREAT AS ADULT | YES ☐ | | REPLY DESIRED? | YES ☑ |

JUVENILE FINGERPRINT

| DATE OF OFFENSE | PLACE OF BIRTH (STATE OR COUNTRY) | COUNTRY OF CITIZENSHIP |
| --- | --- | --- |
| MM DD YY | | |

SEND COPY TO (ENTER ORI)

| MM DD YY 01-01-2001 | FL | USA |

MISCELLANEOUS NUMBERS

SCARS, MARKS, TATTOOS, AND AMPUTATIONS

*(handwritten notes)*

RESIDENCE/COMPLETE ADDRESS
106 Rosman Hwy

| | CITY Rosman | STATE NC |

| LOCAL IDENTIFICATION/REFERENCE 18194-058 | PHOTO AVAILABLE? YES ☐ |

OFFICIAL TAKING FINGERPRINTS (NAME OR NUMBER)

*G. Moore*

| | PALM PRINTS TAKEN? YES ☐ |

EMPLOYER: IF U.S. GOVERNMENT, INDICATE SPECIFIC AGENCY.
IF MILITARY, LIST BRANCH OF SERVICE AND SERIAL NO.

| | OCCUPATION |

| CHARGE/CITATION 1 | DISPOSITION 1 |
| 21:841 & 846 Conspiracy to PWITD Cocaine Base; Ct-1 | LIFE / 5 Y SRT |

| 2 | ADDITIONAL | 2 | ADDITIONAL |
| 3 | | 3 | |

ADDITIONAL

**ATTACHMENT G**

# PARTIAL RELEASE

8 pgs

*** LIMITED OFFICIAL USE ***

DATE: 04/23/2004 TIME: 14:44  PAGE:    1

UNITED STATES MARSHALS SERVICE
PRISONER TRACKING SYSTEM
WESTERN NORTH CAROLINA
DISTRICT: 58   OFFICE: AVL

INDIVIDUAL CUSTODY AND DETENTION REPORT USM (129)

NAME:  LEMAY, ANTHONY ALLEN
USMS NUMBER: 18194058

I. IDENTIFICATION DATA:

USMS NBR: 18194058  NAME: LEMAY, ANTHONY ALLEN

ADDRESS: 106 ROSMAN HWY   ROSMAN, NC 28772                                    PHONE: 828-877-4863

DOB: ███████  AGE: 28  POB: , FL          SEX: M  RACE: W  HAIR: BRO  EYE: HAZ  HEIGHT: 509  WEIGHT: 190

SSN: ███████  FBI NBR: 510195WA3   ALIEN NBR:

*****SPECIAL HANDLING CODE:          SPECIAL HANDLING REMARKS:

                    j(۷)(q) ,ɔ(۷)(q)

DETAINER/DATE  ACTIVE  AGENCY                    REMARK
**/**/****       N

PRISONERS ALIASES:          ALIAS REMARKS:
NONE

GENERAL REMARKS:
NONE

II. CASE INFORMATION:

| CTR | STATUS | COURT CASE NUMBER | FEDERAL COURT CITY |
|-----|--------|-------------------|--------------------|
| 1 | WT-MOVE | 1:02CR105-6 | ASHEVILLE |

| CTR | ARREST DATE | ARRESTING AGENCY | LOCATION OF ARREST | WARRANT NUMBER |
|-----|-------------|------------------|--------------------|----------------|
| 1 | 12/17/2002 | ALCOHOL, TOBACCO AND FIREARMS | | |

| CTR | OFFENSE | OFFENSE REMARK | DISPOSITION |
|-----|---------|----------------|-------------|
| 1 | (5002) BAIL - PERSONAL RECOG | BOND VIOLATION | CHARGES DISMISSED/DROPPED |
| 1 | (3532) COCAINE-POSSESS | CONSP POSS W/I/D COCAINE BASE | GUILTY (PLEA) |

| CTR | SENTENCE DATE | SENTENCE | APPEAL DATE |
|-----|---------------|----------|-------------|
| 1 | 02/23/2004 | LIFE IMPRISONMENT; 5 YEARS SR. | **/**/**** |

III. STATUS HISTORY

| CTR | STATUS | STATUS DATE | CUSTODY DATE | RELEASE DATE | REMARK |
|-----|--------|-------------|--------------|--------------|--------|
| 1 | WT-TRIAL | 12/17/2002 | 12/17/2002 | **/**/**** | |
| 1 | RL-BOND | 03/28/2003 | **/**/**** | 03/28/2003 | |
| 1 | READMIT | 02/16/2004 | 02/16/2004 | **/**/**** | |

```
  BSY39  535*08 *        FEDERAL BUREAU OF PRISONS       *     05-08-2006
PAGE 002        *      CIM CLEARANCE AND SEPARATEE DATA   *     12:48:55

REGISTER NO: 18194-058 NAME: LEMAY

REGISTER                      FIRST   ARS ARS           ARS        ARS  QTR
NUMBER    LAST NAME           NAME    FCL ASSIGN         DATE       TIME ASSIGN

18194-058 LEMAY              ANTHONY  BSY A-DES          05-06-2004 1801 B01-116U
CMC ASSGNS: SEPARATION
02 REMARKS: 4/13/04 MXR/JMM DESIG BSY.
```

(b)(7)c, (b)(7)f

```
G0002       MORE PAGES TO FOLLOW . . .
```



```
 BSY39  535*08 *        FEDERAL BUREAU OF PRISONS        *    05-08-2006
PAGE 003 OF 003 *    CIM CLEARANCE AND SEPARATEE DATA    *    12:48:56

REGISTER NO: 18194-058 NAME: LEMAY

REGISTER
NUMBER    \ LAST NAME          FIRST    ARS ARS         ARS        ARS  QTR
                               NAME     FCL ASSIGN      DATE       TIME ASSIGN
```

(b)(7)c, (b)(7)f

```
G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```



BP-S629.052 **VISITOR INFORMATION** CDFRM
MAR 2002
U.S. DEPARTMENT OF JUSTICE                                      FEDERAL BUREAU OF PRISONS

| Addressee | | |
|---|---|---|
| (b)(7)c | Institution USP BiG SANdy | Date 5-17-04 |
| | Re: (Inmate's Name and Register No.) | |
| | Anthony A. Lemay  18194-058 | |

Dear _____ (b)(7)c _____:

    I am requesting that you be included among my approved visitors. In order to establish your suitability as a visitor, it may be necessary for institution officials to send an inquiry to an appropriate law enforcement or crime information agency to ascertain whether or not placing you on my visiting list would present a management problem for the institution, or have other possible adverse effects. The information obtained will be used to determine your acceptability as a visitor. The Bureau of Prisons' authority to request background information on proposed visitors is contained in Title 18 U.S.C. § 4042.

    In order for you to be considered for the visiting privilege with me, it will be necessary for you to fill out the questionnaire and release form below and return it to the following address: (Institution address).

    You are not required to supply the information requested. However, if you do not furnish the information, the processing of your request will be suspended, and you will receive no further consideration. If you furnish only part of the information required, the processing of your request may be significantly delayed. If the information withheld is found to be essential to the processing of your request, you will be informed, and your request will receive no further consideration unless you supply the missing information. Although no penalties are authorized if you do not supply the information requested, failure to supply such information could result in your not being considered for admittance as a visitor. The criminal penalty for making false statements is a fine of not more than $250,000 or imprisonment for not more than five years or both (See 18 U.S.C. § 1001).

Send To: USP Big Sandy, P.O. Box 2067          Sincerely, *Bruon Salyers*,
        Inez, KY 41224. Attn. B. Salyers

| 1. Legal Name | 2. Date of Birth | 3. Address (Including Zip Code) |
|---|---|---|
| (b)(7)c | (b)(7)c | (b)(7)c |
| 4. Telephone Number (Including Area Code) | 5. Race and Sex of Visitor | |
| (b)(7)c | | |
| 6. Are you a U.S. Citizen? | 6a. If yes, provide Social Security No: | |
| (b)(7)c | 6b. If no, provide Alien Registration No: | (b)(7)c |
| | 6c. Provide Passport No. **FOI EXEMPT** | |
| 7. Relationship to above-named inmate | 8. Do you desire to visit him/her? | |
| (b)(7)c | (b)(7)c | |

9. Did you know this person prior to his/her current incarceration? ✓ Yes ~~SENSITIVE LOU~~

10. If the answer to #9 is yes, indicate the length of time you have known this person and where the relationship developed.
    (b)(7)c

11. Have you ever been convicted of a crime? If so, state the number, date, place, and nature of the conviction/s:
    (b)(7)b

12. Are you currently on probation, parole, or any other type of supervision? If so, state the name of your supervising probation/parole officer and the address and telephone no. where he/she can be contacted:
    (b)(7)c

13. Do you correspond or visit with other inmates? If so, indicate the individual(s) and their location(s):
    (b)(7)c

14. Driver's License No. and State of Issuance
    (b)(7)c

**AUTHORIZATION TO RELEASE INFORMATION**

I hereby authorize release to the Warden of: USP BiG SANdy  any record of criminal offenses for which I
                                 (Institution, Location)
have been arrested and convicted, and any information related to those convictions.

    (b)(7)c

Signature for Authorization to Release Information    (Sign and Print Name)      Parent or Guardian

(If applicant is under 18 years of age, signature of parent or guardian indicates consent of minor to visit inmate).

                                 If additional space is required, you may use the back of this form.
                                      To be filed in Inmate Central File, FOI Section 2
(This form may be replicated via WP)                               Replaces BP-S629 of Sep 00

BP-S629.052 VISITOR INFORMATION CDFRM
MAR 2002
U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| Addressee | | |
|---|---|---|
| (b)(7)c | Institution U.S.P BiG SANdy | Date 5-17-04 |
| | Re: (Inmate's Name and Register No.) Anthony. A. Lemox 18194-058 | |

Dear ___ (b)(7)c _____ ;

    I am requesting that you be included among my approved visitors. In order to establish your suitability as a visitor, it may be necessary for institution officials to send an inquiry to an appropriate law enforcement or crime information agency to ascertain whether or not placing you on my visiting list would present a management problem for the institution, or have other possible adverse effects. The information obtained will be used to determine your acceptability as a visitor. The Bureau of Prisons' authority to request background information on proposed visitors is contained in Title 18 U.S.C. § 4042.

    In order for you to be considered for the visiting privilege with me, it will be necessary for you to fill out the questionnaire and release form below and return it to the following address: (Institution address).

    You are not required to supply the information requested. However, if you do not furnish the information, the processing of your request will be suspended, and you will receive no further consideration. If you furnish only part of the information required, the processing of your request may be significantly delayed. If the information withheld is found to be essential to the processing of your request, you will be informed, and your request will receive no further consideration unless you supply the missing information. Although no penalties are authorized if you do not supply the information requested, failure to supply such information could result in your not being considered for admittance as a visitor. The criminal penalty for making false statements is a fine of not more than $250,000 or imprisonment for not more than five years or both (See 18 U.S.C. § 1001).

Send To:   USP Big Sandy, P.O. Box 2067   Sincerely, Brion Salyers
             Inez, KY  41224.  Attn. B. Salyers

| 1. Legal Name (b)(7)c | 2. Date of Birth (b)(7)c | 3. Address (Including Zip Code) (b)(7)c |
|---|---|---|
| 4. Telephone Number (Including Area Code) (b)(7)c | 5. Race and Sex of Visitor | |

| 6. Are you a U.S. Citizen? (b)(7)c | 6a. If yes, provide Social Security No: |
|---|---|
| | 6b. If no, provide Alien Registration No: _____ |
| | 6c. Provide Passport No: |

| 7. Relationship to above-named inmate (b)(7)c | 8. Do you desire to visit him/her? (b)(7)c |
|---|---|

9. Did you know this person prior to his/her current incarceration? (b)(7)c -LOU

10. If the answer to #9 is yes, indicate the length of time you have known this person and where the relationship developed. (b)(7)c

11. Have you ever been convicted of a crime? If so, state the number, date, place, and nature of the conviction/s: (b)(7)c

12. Are you currently on probation, parole, or any other type of supervision? If so, state the name of your supervising probation/parole officer and the address and telephone no. where he/she can be contacted: (b)(7)c

13. Do you correspond or visit with other inmates? If so, indicate the individual's name and their location(s): (b)(7)c

14. Driver's License No. and State of Issuance (b)(7)c

AUTHORIZATION TO RELEASE INFORMATION

I hereby authorize release to the Warden of: USP BiG SaNdy any record of criminal offenses for which I
                                   (Institution, Location)
                               related to those convictions.

(b)(7)c

               (Sign and Print Name)   Parent or Guardian

(If applicant is under 18 years of age, signature of parent or guardian indicates consent of minor to visit inmate).

                       If additional space is required, you may use the back of this form.
                             To be filed in Inmate Central File, FOI Section 2
(This form may be replicated via WP)            Replaces BP-S629 of Sep 00

BP-S629.052 **VISITOR INFORMATION CDFRM**
MAR 2002
**U.S. DEPARTMENT OF JUSTICE**         **FEDERAL BUREAU OF PRISONS**

| Addressee | Institution U.S.P Big SANdy | Date S-17-04 |
|---|---|---|

Re: (Inmate's Name and Register No.)

Anthony A. Lemoy 18194-058

Dear            (b)(7)c

    I am requesting that you be included among my approved visitors. In order to establish your suitability as a visitor, it may be necessary for institution officials to send an inquiry to an appropriate law enforcement or crime information agency to ascertain whether or not placing you on my visiting list would present a management problem for the institution, or have other possible adverse effects. The information obtained will be used to determine your acceptability as a visitor. The Bureau of Prisons' authority to request background information on proposed visitors is contained in Title 18 U.S.C. § 4042.

    In order for you to be considered for the visiting privilege with me, it will be necessary for you to fill out the questionnaire and release form below and return it to the following address: (Institution address).

    You are not required to supply the information requested. However, if you do not furnish the information, the processing of your request will be suspended, and you will receive no further consideration. If you furnish only part of the information required, the processing of your request may be significantly delayed. If the information withheld is found to be essential to the processing of your request, you will be informed, and your request will receive no further consideration unless you supply the missing information. Although no penalties are authorized if you do not supply the information requested, failure to supply such information could result in your not being considered for admittance as a visitor. The criminal penalty for making false statements is a fine of not more than $250,000 or imprisonment for not more than five years or both (See 18 U.S.C. § 1001).

Send To: USP Big Sandy, P.O. Box 2067    Sincerely, _Bion Salyers_
        Inez, KY 41224. Attn. B. Salyers

| 1. Legal Name | 2. Date of Birth | 3. Address (Including Zip Code) |
|---|---|---|
| (b)(7)c | (b)(7)c | (b)(7)c |

| 4. Telephone Number (Including Area Code) | 5. Race and Sex of Visitor | |
|---|---|---|
| (b)(7)c | | |

| 6. Are you a U.S. Citizen? | 6a. If yes, provide Social Security No: | |
|---|---|---|
| (b)(7)c | 6b. If no, provide Alien Registration No: (b)(7)c | |
| | 6c. Provide Passport No: | |

| 7. Relationship to above-named inmate | 8. Do you desire to visit him/her? |
|---|---|
| (b)(7)c | (b)(7)c |

9. Did you know this person prior to his/her current incarceration? (b)(7)c

10. If the answer to #9 is yes, indicate the length of time you have known this person and where the relationship developed.
    (b)(7)c

11. Have you ever been convicted of a crime? If so, state the number, date, place, and nature of the conviction/s:
    (b)(7)c

12. Are you currently on probation, parole, or any other type of supervision? If so, state the name of your supervising probation/parole officer and the address and telephone number where he/she can be contacted:
    (b)(7)c

**FOI EXEMPT**

13. Do you correspond or visit with other inmates? If so, indicate the individual(s) and their location(s):
    (b)(7)c

14. Driver's License No. and State of Issuance
    (b)(7)c

AUTHORIZATION TO RELEASE INFORMATION

I hereby authorize release to the Warden of: USP Big SANdy any record of criminal offenses for which I
                                       (Institution, Location)

have been arrested and convicted, and any information related to those convictions.
(b)(7)c

Signature for Authorization to Release Information   (Sign and Print Name)     Parent or Guardian

(If applicant is under 18 years of age, signature of parent or guardian indicates consent of minor to visit inmate).

                    If additional space is required, you may use the back of this form.
                    To be filed in Inmate Central File, FOI Section 2
                    Replaces BP-S629 of Sep 00

(This form may be replicated via WP)

BP-S629.052 VISITOR INFORMATION CDFRM
MAR 2002
U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| Addressee | Institution U.S.P Big SAndy | Date S-17-04 |

Re: (Inmate's Name and Register No.)

Anthony A. Lemay

Dear          (b)(7)c                          :

    I am requesting that you be included among my approved visitors. In order to establish your suitability as a visitor, it may be necessary for institution officials to send an inquiry to an appropriate law enforcement or crime information agency to ascertain whether or not placing you on my visiting list would present a management problem for the institution, or have other possible adverse effects. The information obtained will be used to determine your acceptability as a visitor. The Bureau of Prisons' authority to request background information on proposed visitors is contained in Title 18 U.S.C. § 4042.

    In order for you to be considered for the visiting privilege with me, it will be necessary for you to fill out the questionnaire and release form below and return it to the following address: (Institution address).

    You are not required to supply the information requested. However, if you do not furnish the information, the processing of your request will be suspended, and you will receive no further consideration. If you furnish only part of the information required, the processing of your request may be significantly delayed. If the information withheld is found to be essential to the processing of your request, you will be informed, and your request will receive no further consideration unless you supply the missing information. Although no penalties are authorized if you do not supply the information requested, failure to supply such information could result in your not being considered for admittance as a visitor. The criminal penalty for making false statements is a fine of not more than $250,000 or imprisonment for not more than five years or both (See 18 U.S.C. § 1001).

Send To:  USP Big Sandy, P.O. Box 2067      Sincerely, Brian Salyers,
        Inez, KY  41224.  Attn. B. Salyers

| 1. Legal Name (b)(7)c | 2. Date of Birth (b)(7)c | 3. Address (Including Zip Code) (b)(7)c |
| 4. Telephone Number (Including Area Code) (b)(7)c | 5. Race and Sex of Visitor (b)(7)c | |
| 6. Are you a U.S. Citizen? (b)(7)c | 6a. If yes, provide Social Security No: (b)(7)c | |
| | 6b. If no, provide Alien Registration No: | |
| | 6c. Provide Passport No: | |

| 7. Relationship to above-named inmate (b)(7)c | 8. Do you desire to visit him/her? (b)(7)c |

9. Did you know this person prior to his/her current incarceration?    (b)(7)c

10. If the answer to #9 is yes, indicate the length of time you have known this person and where the relationship de
    (b)(7)c

11. Have you ever been convicted of a crime? If so, state the number, date, place, and nature of the conviction/s:
    (b)(7)c                                        FOI EXEMPT

12. Are you currently on probation, parole, or any other type of supervision? If so, state the name of your supervising probation/parole officer and the address and telephone no. where he/she can be contacted:
    (b)(7)c

13. Do you correspond or visit with other inmates? If so, indicate the individual(s) and their location(s):
    (b)(7)c

14. Driver's License No. and State of Issuance
    (b)(7)c

AUTHORIZATION TO RELEASE INFORMATION

I hereby authorize release to the Warden of: USP Big Sandy, any record of criminal offenses for which I
                                      (Institution, Location)
have been arrested and convicted, and any information related to those convictions.
    (b)(7)c

Signature for Authorization to Release Information   (Sign and Print Name)   Parent or Guardian

(If applicant is under 18 years of age, signature of parent or guardian indicates consent of minor to visit inmate).

               If additional space is required, you may use the back of this form.
                        To be filed in Inmate Central File, FOI Section 2
(This form may be replicated via WP)                    Replaces BP-S629 of Sep 00

BP-S629.052 **VISITOR INFORMATION** CDFRM
MAR 2002
U.S. DEPARTMENT OF JUSTICE                              FEDERAL BUREAU OF PRISONS

| Addressee | Institution U.S.P. BiG SANDY | Date 5-17-04 |
|---|---|---|
| (b)(7)c | Re: [Inmate's Name and Register No.] Anthony A. Lemay 18194-058 | |

Dear        (b)(7)c                                    :

I am requesting that you be included among my approved visitors. In order to establish your suitability as a visitor, it may be necessary for institution officials to send an inquiry to an appropriate law enforcement or crime information agency to ascertain whether or not placing you on my visiting list would present a management problem for the institution, or have other possible adverse effects. The information obtained will be used to determine your acceptability as a visitor. The Bureau of Prisons' authority to request background information on proposed visitors is contained in Title 18 U.S.C. § 4042.

In order for you to be considered for the visiting privilege with me, it will be necessary for you to fill out the questionnaire and release form below and return it to the following address: (Institution address).

You are not required to supply the information requested. However, if you do not furnish the information, the processing of your request will be suspended, and you will receive no further consideration. If you furnish only part of the information required, the processing of your request may be significantly delayed. If the information withheld is found to be essential to the processing of your request, you will be informed, and your request will receive no further consideration unless you supply the missing information. Although no penalties are authorized if you do not supply the information requested, failure to supply such information could result in your not being considered for admittance as a visitor. The criminal penalty for making false statements is a fine of not more than $250,000 or imprisonment for not more than five years or both (See 18 U.S.C. § 1001).

Send To: USP Big Sandy, P.O. Box 2067     Sincerely, Brion Salyers
         Inez, KY 41224. Attn. B. Salyers

| 1. Legal Name | 2. Date of Birth | 3. Address (Including Zip Code) |
|---|---|---|
| (b)(7)c | | (b)(7)c |
| 4. Telephone Number (Including Area Code) | 5. Race and Sex of Visitor | |
| (b)(7)c | | |
| 6. Are you a U.S. Citizen? | 6a. If yes, provide Social Security No: | |
| (b)(7)c | 6b. If no, provide Alien Registration No: | (b)(7)c |
| | 6c. Provide Passport No: | |
| 7. Relationship to above-named inmate (b)(7)c | 8. Do you desire to visit him/her? (b)(7)c | XEMPT |

9. Did you know this person prior to his/her current incarceration? ✓ Yes ___ No

10. If the answer to #9 is yes, indicate the length of time you have known this person and where the relationship
        (b)(7)c

11. Have you ever been convicted of a crime? If so, state the number, date, place, and nature of the conviction/s:                                                                    (b)(7)c
        (b)(7)c                                    NSITIVE-LOU

12. Are you currently on probation, parole, or any other type of supervision? If so, state the name of your supervising probation/parole officer and the address and telephone no. where he/she can be contacted:
        (b)(7)c

13. Do you correspond or visit with other inmates? If so, indicate the individual(s) and their location(s):
        (b)(7)c

14. Driver's License No. and
        (b)(7)c

AUTHORIZATION TO RELEASE INFORMATION

I hereby authorize release to the Warden of USP Big Sandy any record of criminal offenses for which I
                                          (Institution, Location)

have been arrested and convicted, and any information related to those convictions.
        (b)(7)c

                              .... nd Print Name)    Parent or Guardian

(If applicant is under 18 years of age, signature of parent or guardian indicates consent of minor to visit inmate).

                                    If additional space is required, you may use the back of this form.
                                              To be filed in Inmate Central File, FOI Section 2
(This form may be replicated via WP)                                Replaces BP-S629 of Sep 00

**ATTACHMENT H**



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** OGC
**NUMBER:** 1351.05
**DATE:** 9/19/2002
**SUBJECT:** Release of Information

PART ONE: **[GENERAL PROVISIONS AND PROCEDURES]**

1. **[PURPOSE AND SCOPE § 513.30. This subpart establishes procedures for the release of requested records in possession of the Federal Bureau of Prisons ("Bureau"). It is intended to implement provisions of the Freedom of Information Act (FOIA), 5 U.S.C. 552, and the Privacy Act, 5 U.S.C. 552a, and to supplement Department of Justice (DOJ) regulations concerning the production or disclosure of records or information, 28 CFR part 16.]**

The Freedom of Information Act (FOIA) and the Privacy Act (PA) interact with each other in two areas:

- When any person requests access to records about himself or herself, both statutes become potentially applicable;

- When any person requests access to another individual's record through the FOIA, the Privacy Act may prohibit the disclosure of that record unless FOIA requires it.

The determination of what information may be released requires Bureau staff to have a basic understanding of both the FOIA and the Privacy Act, as well as a working knowledge of DOJ and Bureau policy. Bureau staff also should be aware that the Privacy Act establishes criminal penalties and civil liabilities for unauthorized disclosures. The appropriate Regional Counsel shall be contacted when staff are uncertain whether requested information may be disclosed.

Staff shall become familiar with the policy governing release of information, with special emphasis upon those areas with direct application to the employee's job.

Information requests submitted by the union pursuant to 5 U.S.C. § 7114 will be addressed in accordance with this provision and relevant case law.

**[Bold Type – Rules]**
Regular Type – Implementing Information

This Program Statement is divided into four major parts:

| Part | Page |
|---|---|
| General Provisions and Procedures | 1 |
| Inmate Requests to Institution for Information | 12 |
| Privacy Act Requests for Information | 21 |
| Freedom of Information Act Requests for Information | 25 |

2. **SUMMARY OF CHANGES.** This Program Statement is being revised to prohibit inmates from obtaining and possessing photocopies of their Pre-sentence Reports (PSR) and the Statement of Reasons (SOR) from their Judgment(s) in a Criminal Case. The purpose of this prohibition is to protect inmates from being coerced by other inmates to produce their PSRs and SORs for illicit purposes. Inmates will be permitted to review their PSRs and SORs, but cannot obtain or possess photocopies. This revision also introduces a new form which inmates can use to facilitate court review of their PSRs or SORs.

If local procedures are changed, notification to the union and training will be handled in accordance with the Master Agreement.

3. **PROGRAM OBJECTIVES.** The expected results of this program are:

   a. Information will be released to a requester in accordance with Federal law and the regulations and policies of the U.S. Department of Justice.

   b. Inmate Freedom of Information Act requests to the Central Office will be reduced by increasing the use of institution procedures that provide for inmate review of Bureau policy documents and records in Inmate Central Files.

   c. Future litigation pertaining to FOIA/Privacy Act issues will be reduced.

4. **DIRECTIVES AFFECTED**

   a. **Directive Rescinded**

      PS 1351.04    Release of Information (12/5/96)

   b. **Directives Referenced**

      PS 1330.13    Administrative Remedy Program (12/22/95)
      PS 1480.05    Contacts with News Media (9/21/00)
      PS 5070.10    Judicial Recommendations and U.S. Attorney Reports, Responses to (6/30/97)

| PS 5270.07 | Inmate Discipline and Special Housing Units (12/29/87) |
| PS 5310.12 | Psychology Services Manual (8/13/93) |
| PS 5800.10 | Mail Management Manual (11/3/95) |
| PS 5800.11 | Inmate Central File, Privacy Folder and Parole Mini- Files (9/8/97) |
| PS 6000.05 | Health Services Manual (9/15/96) |

Public Information Officer's Handbook (1994)

c.  Bureau rules cited in this Program Statement are contained in 28 CFR 513.30 through 68.

d.  Other rules referenced in this Program Statement are contained in 5 CFR part 297 and 28 CFR parts 16 and 301.

e.  United States Code sections cited in this Program Statement are contained in 5 U.S.C. 301, 552 and 552a; 13 U.S.C.; 18 U.S.C. 3621, 3622, 3624, 4001, 4042, 4081, 4082, 5006, 5024; 28 U.S.C. 509, 510; and 31 U.S.C. 3711(f).

f.  Privacy Act Issuances, 1991 Comp., Volume II.

g.  United States Department of Justice et al. v. Julian et al., 108 S.Ct. 1606 (1988).

5.  **STANDARDS REFERENCED**

a.  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions:  3-4020, 3-4095, and 3-4096

b.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  3-ALDF-1E-04, 1E-05

c.  American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies:  2-CO-1E-06, 1E-07, and 1E-08

6.  [LIMITATIONS § 513.31

a.  **Social Security Numbers**.  **As of September 27, 1975, Social Security Numbers may not be used in their entirety as a method of identification for any Bureau record system, unless such use is authorized by statute or by regulation adopted prior to January 1, 1975.**

b.  **Employee Records**.  **Access and amendment of employee personnel records under the Privacy Act are governed by Office of Personnel Management regulations published in 5 CFR part 297 and by Department of Justice regulations published in 28 CFR part 16.]**

(c) **Documents from Non-Federal Agencies.** If a document has been received from a source outside the Federal government (e.g., a state agency), it shall be placed in the Privacy Folder, except as provided in section 12, first paragraph (28 CFR 513.40).

When a request for records includes a document from a non-Federal agency, Bureau staff must make a determination of its releasability in consultation with the non-Federal organization (see Attachment D). If the originating non-Federal agency recommends non-disclosure, and Bureau staff determine that non-disclosure is appropriate under 28 CFR 513.32, staff shall document the rationale for non-disclosure and place the document in the Privacy Folder.

(d) **Documents from Federal Courts and Probation Offices**

(1) **Federal Presentence Reports (PSR) and Statements of Reasons (SOR) from Judgments in Criminal Cases. For safety and security reasons, inmates are prohibited from obtaining or possessing photocopies of their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign, military, etc.).** Inmates violating this provision are subject to disciplinary action.

This prohibition applies only to the SOR portion of an inmate's Judgment in a Criminal Case. The rest of the Judgment document remains releasable unless circumstances or policy dictate otherwise. PSRs and SORs received by mail will be treated as contraband, and handled according to the Mail Management Manual.

This prohibition does not apply to inmates in Bureau of Prisons custody with a need to review their PSRs prior to sentencing. For example, a pretrial inmate scheduled for sentencing may possess and review the PSR in preparation for sentencing. After sentencing, however, the inmate is prohibited from retaining a copy of the PSR.

The Bureau implemented this policy for the following reasons.

- Many PSRs and SORs contain information regarding the inmates' government assistance, financial resources, community affiliations, etc.

- The Bureau has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs and SORs to learn if they are informants, gang members, have financial resources, etc.

■   Inmates who refuse to provide the documents are threatened, assaulted, and/or seek protective custody.  Likewise, inmates providing PSRs and SORs containing harmful information are faced with the same risks of harm.

Inmates needing a copy of their PSRs or SORs for filing as an attachment in a court case may obtain, complete, and submit to the court an Inmate Request For Certification or Judicial Notice of Pre-sentence Report and/or Statement of Reasons form (BP-S757.013).  The form, which includes instructions for completion, must be available to inmates in the housing units and law libraries.

Although prohibited from obtaining or possessing photocopies, federal inmates are entitled under the FOIA to access their own PSRs (see <u>United States Department of Justice v. Julian</u>, 486 U.S. 1 (1988)) and SORs.  Inmates must be provided reasonable opportunities to access and review their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign, military, etc.).  Inmates are responsible for requesting an opportunity to access and review these records with unit staff in accordance with the Program Statement on Inmate Central File, Privacy Folder, and Parole Mini-Files. **To facilitate inmate access and review, PSRs and SORs should ordinarily be maintained in the disclosable portion of the central file unless significant safety and security concerns dictate otherwise.**

In addition to the above procedures, other provisions of the FOIA may require limiting inmate access to PSRs and SORs. Third party requests for inmate PSRs and SORs should be handled according to Section 29 of this Program Statement.

Staff must maintain PSRs as follows:

●   A PSR prepared **on or after December 1, 1975,** is to be placed in the disclosable portion of the Inmate Central File.

●   A PSR prepared **before December 1, 1975,** is to be returned to the sentencing court with a cover letter indicating that the PSR is being returned based on the Supreme Court's decision in <u>Julian</u> and the fact that the PSR was not prepared with the expectation of release.  No copy of the returned PSR is to be maintained at the institution, although relevant material from the PSR may be incorporated into other documents.

- Documents which the sentencing court has
  sealed or otherwise labeled as not
  disclosable to the inmate must be placed in
  the privacy folder.  Questions regarding such
  documents should be referred to the Regional
  Counsel.

    (2)  **Documents Other than Federal PSIs.**  Generally,
documents originating in a Federal court or probation office
shall be placed in the Privacy Folder if the documents are
clearly marked to indicate that disclosure to the inmate is
unadvisable.  Other documents, such as a court-ordered study the
Bureau prepared, shall be referred to the requesting court for
that court's instructions as to disclosure.  A copy of the
document shall be maintained in the Privacy Folder until a final
determination is made regarding its disclosure.

    When Bureau staff reclassify a document from non-
disclosable to disclosable, subsequent to any information request
encompassing that document, staff shall place the reclassified
document in the disclosable section of the Inmate Central File.

   **[b.  Procedures for Inmate Review of His or Her Inmate Central
File**.

    **(1)  Prior to the inmate's review of the file, staff are to
remove the Privacy Folder which contains documents withheld from
disclosure pursuant to § 513.32.**

    **(2)  During the file review, the inmate is to be under
direct and constant supervision by staff.  The staff member
monitoring the review shall enter the date of the inmate's file
review on the Inmate Activity Record and initial the entry.
Staff shall ask the inmate to initial the entry also, and if the
inmate refuses to do so, shall enter a notation to that effect.**

    **(3)  Staff shall advise the inmate if there are documents
withheld from disclosure and, if so, shall advise the inmate of
the inmate's right under the provisions of § 513.61 to make a
FOIA request for the withheld documents.]**

28 CFR 513.32 refers to Section 7 of this Program Statement.
28 CFR 513.61 refers to Section 27 of this Program Statement.
The Inmate Activity Record refers to form BP-381.

13.  **[INMATE ACCESS TO INMATE CENTRAL FILE IN CONNECTION WITH
PAROLE HEARINGS** § 513.41.  **A parole-eligible inmate (an inmate
who is currently serving a sentence for an offense committed
prior to November 1, 1987) may review disclosable portions of the
Inmate Central File prior to the inmate's parole hearing, under
the general procedures set forth in § 513.40.  In addition, the
following guidelines apply:]**

# EXHIBIT 3

DL-130716-07

# EXHIBIT A

**FOIA REQUEST**

To: _Director_                                    **Date:** August 24, 2006

Internal Revenue Service

Department of the Treasury                         INTERNAL REVENUE SERVICE
                                                   RECEIVED
Washington, D. C.  20224
                                                   SEP 1 9 2006

Dear Sir:                                          DISCLOSURE OFFICE
                                                   LAGUNA NIGUEL, CA
       This is a request under the Freedom of Information Act.
       I request a copy of any and all documents, records and information
that any part of your agency has or had in its possession that is in
any way connected to, related to, or even remotely in reference to
my name or the subject matter briefly described below:
I am an OTHER requester.  I request personal tax records.  I request you
to ~~search the years 1990 to this instant date~~, inclusively.  Search the
~~Criminal Investigation~~ section.  I request you search the district in
North Carolina only.  ~~I will pay reasonable fees incurred.~~

       I will pay reasonable search and reproduction fees.
             My Biographical data is as follows:
FULL NAME: ANTHONY ALLEN LEMAY

DATE OF BIRTH ██████████████

PLACE OF BIRTH Bartow, Florida USA

SOCIAL SECURITY NUMBER ██████████████

       I declare (or certify, verify, or state) under the penalty of
perjury that the foregoing is true and correct.

Executed on this _24th_ day of ___August___, 2006.

                       By X _Anthony L. LeMay_
                              Affiant/Declarant Herein

(28 USC Section 1746)

Name: ANTHONY LEMAY

Reg. No. _18194-058_

**United States Penitentiary**
**Box 2068**
**INEZ, Kentucky  41224**

cc : file

# EXHIBIT B



# DEPARTMENT OF THE TREASURY
### INTERNAL REVENUE SERVICE
### WASHINGTON, D.C. 20224

**SMALL BUSINESS/SELF-EMPLOYED DIVISION**

SEP 2 1 2006

Anthony Allen Lemay
United States Penitentiary
P.O. Box 2068
Inez, Kentucky 41224

Dear Mr. Lemay:

This is in response to your Freedom of Information Act request dated August 24, 2006, that was received in this office on September 19, 2006.

To constitute a valid request under the Act, certain requirements must be met.

Please send us the information needed to meet the requirements of the Act as indicated in the boxes checked on the back of this letter.

If you need further information, please contact A. Rascon, Badge #95-06372, at (213) 576-3636 or by mail at IRS –Disclosure Office, 24000 Avila Road, MS 2201, Laguna Niguel, CA 92677. Refer to case number 13-2006-04542.

Sincerely

A. Rascon
Disclosure Specialist

## Freedom of Information Request Analysis Form

The boxes checked apply to your request. Please do the following:

1. Sign your request.

2. Describe the records in reasonably sufficient detail to enable us to find them.

3. Establish your identity and right to access to the records you requested. Giving out these records is limited by statute or regulations. Therefore, you must:

   a. Present a single document bearing a photograph (such as a passport or identification badge), or two items of identification that bear both a name and signature, without a photograph, such as a driver's license or credit card if you come in person; or

   b. Send your signature, address, and one other identifier (such as a copy of a driver's license) bearing your signature if you make the request by mail; or

   c. Present in person or send by mail a notarized statement swearing to or affirming your identity.

4. Include a proper power of attorney since you made the request on behalf of another person. The Form 2848 is illegible. The document has been reduced and we are unable to make out the taxpayer's Social Security Number.

5. State whether you wish to inspect the records or be furnished copies without first inspecting them.

6. State your agreement to pay for search and copying fees. If you are not able to pay, you may request that such fees be reduced or waived if you can show that the information will primarily benefit the general public. This request must not place an undue burden upon the Internal Revenue Service.

7. You failed to enclose a photocopy of your Drivers License.

# EXHIBIT C

# FOIA APPEAL

To: _DiReCTOR_

_INTERNAL Revenue SeRvice_
_Department of The TREASURY_
_WAShington, DC 20224_

DATE ___12/16/06___

FOIA To: ___IRS___

Request No. _13-2006-04542_

Date of Request ___8/24/06___

This is an appeal under the Freedom of Information Act.
Please review the action or inaction of the following agency: ___IRS___
in conjunction to my request for records. (check appropriate box(es) below:

_____ The agency has not responded and the time limits within which to do so has expired.

_____ The agency has claimed that no records could be found and I want to appeal that "no records
response.

✕ The agency has blanket denied release of records.

_____ The agency has released certain records and withheld some by claiming certain exemptions.

_____ The agency has withheld certain records but has not claimed any exemptions or stated any reason
for the deletions.

_____ The agency has claimed there are no records available or they have been destroyed and I believe
they have not made a sufficient search.

_____ The agency has stated records were destroyed but has not stated where, how, when and for what
reason they were destroyed and under what provision of the law.

✕ I believe the agency action or inaction otherwise unjust for the following reason: _____

_I DiD File A PROPER RequesT_

Appellant believes the agency or public body has acted arbitrary and/or capricious and he asks for
review of the agency action/inaction.

The burden is on the agency or public body to show the material withheld fits within the parameters of
the exemptions claimed. The appellant asks that the agency itemize and index the withheld material and
including detailed affidavits & explanations to support any justifications for refusal to disclose.

## Received

JAN 09 2007

Disclosure Office
Baltimore Maryland

Sincerely,

x _Anthony Lemay_
  (signature)
_AnThony Lemay  18194-05Y_
(name)        (number)
USP Big Sandy; 1197 Airport Road
Box 2068; Inez, KY 41224

cc: file

**(Failure to timely respond to this administrative appeal will result in complaint for judicial review)**

INMATE NAME: Anthony LeMay

REGISTER NUMBER: 18194-058

U.S.P. BIG SANDY
P.O. BOX 2068
INEZ, KY 41224



Director
Internal Revenue Service
Department of the Treasury
Washington, D.C., 26224

DL-130716-07

# EXHIBIT D

**Internal Revenue Ser**
Fresno Campus Appeals Office
M/S 55201
Fresno, CA  93888-0700

**Department f the Treasury**

**Person to Contact:**
Terri Carrillo
Employee ID Number: 78-00022
Tel:  (559) 452-3224
Fax: (559) 452-3266

**Refer Reply to:**
AP:FRS:CO:TC

Date:   MAR   5 2007       

**In Re:**
Freedom of Information Act

**Disclosure Case Number:**
13-2006-04542

Anthony Lemay
USP Big Sandy
1197 Airport Road Box 2068
Inez, KY  41224

Dear Anthony Lemay:

This letter is in response to your December 16, 2006 which purports to administratively appeal under the Freedom of Information Act (FOIA), 5 U.S.C. Section 552.  The FOIA, 5 U.S.C. Section 552(a)(3)(A), and the Department of the Treasury Regulations that implement the FOIA, specify that certain information must be included in your letter in order to be treated as a proper FOIA request and or appeal.

The purported appeal was not received by the Service within the 35 day mandatory period for filing an FOIA appeal, and, is therefore untimely.  26 C.F.R. Section §601.702(c)(10)(i).  An administrative appeal under the FOIA must be filed within the time limits set forth in an agency's regulations.  See Oglesby v. Department of the Army, 920 F.2d 57 (D.C. Cir. 1990).

The appeal does not meet the minimum requirements of the Internal Revenue Service regulations.  Reg. Section 601.702(c)(10(ii) requires an appeal to "reasonably describe the records requested to which the appeal pertains. . . ."  Reg. Section 601.702(c)(10)(v) requires an appeal to "[s]pecify the date of the request, and the office to which the request was submitted and, where possible, enclose a copy of the initial request and the initial determination being appealed. . . ."

This office is charged with hearing administrative appeals from the denial of responsive documents under the Freedom of Information Act (FOIA).  Because there is no record of these requests being denied through Disclosure, your letter does not represent a proper administrative appeal within the purview of the FOIA.  If you still require the documents requested, please submit your request to the Disclosure Office that services the area in which the documents are located.

Sincerely,

Marge Field
Appeals Team Manager

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY ALLEN LEMAY )<br><br>Plaintiff )<br><br>v. )<br><br>BUREAU OF ALCOHOL, TOBACCO, )<br>FIREARMS AND EXPLOSIVES, )<br>ET AL. )<br><br>Defendants. )<br>——————————————— ) | Case No: 07-1082 (RJL) |

## DECLARATION

I, WILLIAM E. BORDLEY, hereby make the following Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am an Associate General Counsel and Freedom of Information/Privacy Act Officer of the United States Marshals Service (USMS), assigned to the Headquarters, Office of General Counsel, Arlington, Virginia. I am experienced with the procedures for responding to requests made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act (PA), 5 U.S.C. § 552a, for information maintained in the records and files of the USMS. The USMS Headquarters Office of General Counsel (OGC) is responsible for processing all FOI/PA requests made to any USMS office located throughout the United States pursuant to USMS policy.

### Background

2. Plaintiff submitted a request letter to the USMS Headquarters, dated August 23, 2006, and received in the Office of General Counsel (OGC) on September 18, 2006, requesting information pertaining to himself. (See Exhibit A)

3. By letter dated October 5, 2006, the USMS advised plaintiff that his request was received and that it had commenced a search for records. (See Exhibit B)

4. The USMS conducted a search for records on plaintiff, by his name and personal identifiers, e.g., date and place of birth, social security number, and prisoner registration number pursuant to his request. The search was conducted in the USMS offices he identified, to wit, all districts in North Carolina, and all districts in Florida which encompassed the Eastern, Middle, and Western Districts of North Carolina, and the Middle, Northern, and Southern Districts of Florida. These offices were provided plaintiff's date and place of birth, social security number, and prisoner number, all of this information was furnished by plaintiff.

5. The search for plaintiff's records was conducted by the USMS FOI/PA liaisons in the above districts referenced in plaintiff's request letter. The FOI/PA liaisons in USMS district offices routinely coordinate and/or conduct document searches in their respective district office in response to FOIA and PA requests. The FOIA/PA liaisons are knowledgeable about the records and files maintained by their particular offices.

6. The USMS systems of records routinely encompassed by a search for prisoner records is the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007. These systems of records are searched by an individual's name and/or personal identifier. The WIN and PPM/PTS electronic records revealed that plaintiff was arrested following the issuance of a warrant in the Western District of North Carolina, Asheville Division and housed in the Western District of North Carolina. There are no USMS records indicating that Plaintiff was ever investigated, arrested, or

2

housed by the USMS in Florida, consequently no records pertaining to plaintiff, other than those described below, were located by the FOIA/PA liaisons in the Middle, Northern, and Southern Districts of Florida.

7. Documents pertaining to plaintiff were located by the USMS office in the Western District of North Carolina in the PPM/PTS and WIN systems of records. These systems assist the USMS in carrying out its statutory law enforcement responsibilities related to receiving, processing, transporting, and maintaining custody of federal prisoners from the time of their arrest by a U.S. Marshal or their remand to a U.S. Marshal by the court until the prisoner is committed by the court to the Attorney General for service of sentence, otherwise released from custody or returned to custody of the U.S. Parole Commission or Bureau of Prisons, the execution of Federal arrest warrants, and the investigation of fugitive matters. See Rule 4, Federal Rules of Criminal Procedure, 18 U.S.C. § 4086, 28 U.S.C. § 566, and 28 C.F.R. § 0.111(a), (e), (j), (k), (q). As such, these systems of records are exempt from the access provision of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2). See 28 C.F.R § 16.101(a), (g), (q). To ensure maximum access, plaintiff's records were processed for disclosure pursuant to the Freedom of Information Act, 5 U.S.C. § 552. As a result of the search of these systems of records by plaintiff's name and/or personal identifier, eighty-three (83) pages of material indexed to plaintiff were located in the USMS district office.

8. By letter dated December 6, 2006, the USMS responded to plaintiff's request, informing him that after conducting a search of its files, eighty-three (83) pages had been located which were indexed to his name. Of this material, the USMS released seventy-eight (78) pages to plaintiff; forty-eight (48) pages were released in their

3

entirety, three pages were referred to the Bureau of Prisons (BOP), and two pages were referred to the Executive Office for U.S. Attorneys (EOUSA) for their disclosure determination and direct response to plaintiff in accordance with 28 C.F.R. § 16.4(c)(2). The remaining thirty (30) pages were released with information excised and withheld pursuant to exemptions 2 and 7 (C) of the FOIA, 5 U.S.C. § 552(b)(2) , and (b) (7) (C). Plaintiff was informed of his right to appeal the USMS actions regarding his request to the Department of Justice Office of Information and Privacy (OIP). (See Exhibit C).

9. By letter dated August 13, 2007, the USMS made a supplemental disclosure to plaintiff. This supplemental disclosure released in its entirety one document which had been released with a deletion in the December 6, 2006 disclosure letter. The deletion in this document (a public record document) was inadvertently made in the December 6, 2006 release. Accordingly, the August 13, 2007 supplemental disclosure corrected this error and released this one document in its entirety. As a result, forty-nine (49) pages have been released in their entirety and only twenty-nine (29) pages released with deletions. (See Exhibit D).

10. On August 13, 2007, the USMS FOIPA Specialist, Shaaron L. Keys, contacted the Office of Information and Privacy to determine whether plaintiff had filed an administrative appeal regarding USMS actions on his FOI/PA request. OIP had no record of plaintiff's appeal.

### **Exemption Cited and Basis for Withholding**

11. Exemption 2 allows an agency to withhold matter related solely to internal personnel rules and practices of the agency. 5 U.S.C. § 552(b)(2). This exemption was applied to withhold information that would identify internal FedEX Air Bill account

4

numbers assigned to USMS district offices to facilitate the billing and shipment of a
prisoner's personal property. Disclosure of this information could allow individuals
unauthorized access to and compromise of the prisoner property account system and
allow the public to circumvent procedures established for the billing and shipment of
prisoner personal property and would present an opportunity for misuse and fraud.
These account numbers are used for purely internal USMS billing purposes and do not
affect members of the public. This information meets the test of predominantly internal
information set forth in Crooker v. BATF, 670 F.2d 1051, D.C. Cir. (1981), for
withholding information pursuant to exemption 2. In addition, there is no legitimate
public interest in disclosure of this purely internal information. Accordingly, exemption
2 was applied to withhold this information from disclosure.

12. Exemption 7(C) allows an agency to withhold records or information compiled
for law enforcement purposes to the extent that production could reasonably be
expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. §
552(b)(7)(C). This exemption was applied to withhold the names of federal and non-
federal law enforcement officers and other government employees. Plaintiff presents no
public interest to warrant disclosing the names of these individuals, nor does the USMS
believe that public disclosure of this information is warranted. To the contrary, the
release of the names of these employees could subject these individuals to unwarranted
public attention, harassment, and annoyance, and would thereby impair the
effectiveness of these employees in carrying out their official duties and potentially cause
unwarranted attention to them in their private lives, and could possibly pose a danger to
their life or physical safety. Absent a legitimate public interest, disclosure could

5

reasonably be expected to constitute an unwarranted invasion of personal privacy.  In considering whether the public interest in disclosure outweighed the individual's interest in privacy, the USMS determined that no legitimate interest would be served by disclosure of this information. 5 U.S.C. § 552 (b)(7)(C).

13.  Exemption 7(C) was applied also to withhold information pertaining to third party individuals, including prisoners other than plaintiff.  In reaching the decision to withhold personally identifiable information from documents released to plaintiff, the USMS considered whether or not there was a legitimate public interest in disclosure which would outweigh the individual's privacy interest in non-disclosure.  However, it is not readily apparent how information identifiable to prisoners other than plaintiff and other private individuals would satisfy a legitimate public need for information about the workings of our criminal justice system and the USMS could discern no legitimate public interest in disclosure of this information.  Release of this identifying information could expose these individuals to unwarranted public attention, embarrassment, harassment or annoyance for being associated with an official criminal law enforcement matter.  Further, plaintiff provides no indication as to how disclosure of such information would meet the basic purpose of the FOIA i.e., to shed light on an agency's performance of its statutory duties, nor can the USMS discern any public interest in disclosure which would outweigh the privacy of these individuals, including the possible danger to their life or physical safety for cooperating in law enforcement activity. Disclosure to plaintiff would be equivalent to disclosure to the public and, as such, would constitute a clearly unwarranted invasion of personal privacy since no legitimate public interest would be served by disclosure.  5 U.S.C. § 552(b)(7)(C).

6

14.   A description of the documents released to plaintiff on December 6, 2006, with excisions made by the USMS pursuant to exemptions 2 and 7(C) of the FOIA is provided as follows:

| Documents Released with Certain Information Deleted and Withheld | No: of Pages |
|---|---|
| **Item 1:** Individual Custody and Detention Report (Form USM-129) dated 5/5/04 Removed name of government employee, and other prisoner third-party individual **Exemption 7(C) - removed name of government employee, and other prisoner** | 2 |
| **Item 2:** Prisoner Custody Alert Notice (Form USM-13 ) dated 2/23/04; 4/20/04; 7/15/04 **Exemption 7(C) - removed names of government personnel, and other prisoners** | 3 |
| **Item 3:** FedEx USA Airbills dated 2/28/03; 3/1/04; 5/1/04 **Exemption 2 - removed internal account numbers** | 3 |
| **Item 4:** Prisoner Remand or Order to Deliver and Receipt for U.S. Prisoners (Form USM-41) dated 12/17/02; **Exemption 7(C) - Removed names of other prisoners, and law enforcement personnel** | 1 |
| **Item 5:** Prisoner Remand or Order to Deliver and Receipt of U.S. Prisoners (Form USM-41) dated 2/28/03 **Exemption 7(C) - Removed names of other prisoners, and law enforcement personnel** | 3 |
| **Item 6:** Prisoner Remand or Order to Deliver and Receipt of U.S. Prisoners (Form USM-41) dated 2/16/04 **Exemption 7(C) - Removed names of law enforcement personnel** | 1 |
| **Item 7:** Prisoner Remand or Order to Deliver and Receipt of U.S. Prisoners (Form USM-41) dated 3/1/04 **Exemption 7(C) - Removed names of other prisoners, and law enforcement personnel** | 2 |

Item 8:     Prisoner Remand or Order to Deliver and Receipt          2
            of U.S. Prisoners (Form USM-41) dated 3/6/04
            (w/duplicate copy)
            **Exemption 7(C) - Removed names of other prisoners,**
            **and law enforcement personnel**

Item 9:     Prisoner Remand or Order to Deliver and Receipt          2
            of U.S. Prisoners (Form USM-41) dated 4/20/04
            **Exemption 7(C) - Removed names of other prisoners,**
            **and law enforcement personnel**

Item 10:    Limited Official Use (Form USM-106) dated 4/23/04        1
            **Removed name of other prisoner, and initials of**
            **government employee**

Item 11:    USMS Medical Summary of Federal Prisoner/Alien In Transit    1
            dated 4/23/04
            **Removed names of third-party individuals**

Item 12:    Fax transmittal sheets dated 3/18/ and 4/20/04 respectively   3
            (w/duplicate)
            **Removed name of other prisoner, and names of government**
            **employees**

Item 13:    Federal Prisoner's Property Receipt (Form USM-18)        1
            **Removed name of government employee**

Item 14:    Prisoner Remand or Order to Deliver and Receipt          1
            for U.S. Prisoners (Long Form) dated 5/3/04
            **Removed names of other prisoners, and law enforcement**
            **personnel**

Item 15:    Federal Bureau of Investigation Fingerprint Sheet (page 2)   1
            dated 12/17/02
            **Removed name of government employee**

*Item 16:   Warrant for Arrest of Pretrial Release dated 2/16/04     1
            **Removed name of law enforcement personnel**

*/This document was released in its entirety without deletions by letter dated
August 13, 2007.  See paragraph 9 of this Declaration.

| Item 17: | Electronic Fingerprint Card (backside) dated 2/16/04 | 1 |
| | **Removed name of law enforcement personnel** | |

| Item 18: | Attorney Special Request for Production of Federal Prisoner (backside) dated 2/17/04 | 1 |
| | **Removed name of government employee** | |

15. In summary, a total of eight-three (83) pages were located which were indexed to plaintiff's name. Of this material, the USMS released seventy-eight pages to plaintiff of which, forty-nine (49) pages have now been released in their entirety, and twenty-nine (29) pages released with information excised and withheld pursuant to exemptions 2 and 7(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C). The remaining five pages, contained information that originated with the Executive Office for U.S. Attorneys (2) pages, and the Bureau of Prisons, (3) pages, and were referred to the respective agencies for their disclosure determination and direct response to plaintiff.

16. All non-exempt portions of USMS documents pertaining to plaintiff have been segregated and released to him.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my information and belief.

*Wm E Bordley*

_____
**WILLIAM E. BORDLEY**

Date Executed: August 14, 2007

9

## FOIA REQUEST

To: __Director__                                    Date: __August 23, 2006__

United States Marshals Service

Department of Justice

Washington, D. C. 20530


Dear Sir:

    This is a request under the Freedom of Information Act.

    I request a copy of any and all documents, records and information that any part of your agency has or had in its possession that is in any way connected to, related to, or even remotely in reference to my name or the subject matter briefly described below:

ALL RECORDS in the Districts of NOrth Carolina.  Also, all districts in Florida.


    I will pay reasonable search and reproduction fees.

    My Biographical data is as follows:

FULL NAME: __ANTHONY ALLEN LEMAY__

DATE OF BIRTH __█████████████__

PLACE OF BIRTH __Bartow, Florida USA__

SOCIAL SECURITY NUMBER __█████████__

    I declare (or certify, verify, or state) under the penalty of perjury that the foregoing is true and correct.

Executed on this __23rd__ day of __August__, __2006__.

By X __Anthony Lemay__
                Affiant/Declarant Herein

(28 USC Section 1746)


Name: __ANTHONY LEMAY__

Reg. No. __18194-058__


United States Penitentiary
Box 2068
INEZ, Kentucky  41224


cc : file



# EXHIBIT A

INMATE NAME: Anthony LeMay

REGISTER NUMBER: 18194-058

U.S.P. BIG SANDY
P.O. BOX 2068
INEZ, KY 41224

DEPARTMENT OF JUSTICE
SEP 1-5 2006
Director
United States Marshals Service
U.S. Department of Justice
Washington, D.C. 20530

October 5, 2006

Anthony Lemay
Reg. No. 18194-058
USP
Box 2068
Inez, KY 41224

Re:    Freedom of Information/Privacy Act Request No. 2006USMS9935
       Subject: Self

Dear Mr. Lemay:

The United States Marshals Service is in receipt of your Freedom of Information/Privacy Act request for records maintained by this Bureau. We have commenced a search for documents responsive to your request and will contact you when our processing is complete.

Although we are unable to determine at this time the amount of fees to be charged to you, if any, the filing of your request constitutes your agreement to pay all applicable fees that may be charged under 28 C.F.R. § 16.11 or § 16.49, up to $25.00. You will be notified as soon as practicable if the estimated or actual fee for satisfying your request exceeds $25.00.

Should you have any questions, please contact the FOIA Service Center or Shaaron L. Keys at 202-307-9059.

Sincerely,

**WILLIAM E. BORDLEY**
**Associate General Counsel, FOIPA Officer**
**Office of General Counsel**





December 6, 2006

Anthony Lemay
Reg. No. 18194-058
USP, Box 2068
Inez, KY 41224

Re:  **Freedom of Information/Privacy Act Request
No. 2006USMS9935; Subject: Self**

Dear Mr. Lemay:

This is in response to your above request.

Pursuant to your request, the Marshals Service conducted a search of its files and located eighty-three (83) pages indexed to your request. Five of these documents originated with or contain information which originated with the Executive Office for U.S. Attorneys (2 pages), and the Bureau of Prisons (3 pages) and have been to these agencies for disclosure determination and direct response to you pursuant to 28 C.F.R. Section 16.42(d).

The remaining seventy-eight (78) pages are being released to you. However, internal administrative markings, and the names and information identifiable to government personnel, third party individuals, including other prisoners have been deleted from this material pursuant to exemptions 2 and 7(C) of the Freedom of Information Act, 5 U.S.C. Section 552(b).

Exemption 2 allows an agency to withhold matter related solely to internal personnel rules and practices. Exemption 7(C) allows this Bureau to withhold records or information compiled for law enforcement purposes, to the extent that the production of such records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy. As such, this material is not appropriate for discretionary release. The Marshals Service located no additional records indexed to your name.

Please find the above-mentioned 78 pages enclosed.

EXHIBIT C

If you are dissatisfied with my action on this request, you may appeal from this partial denial by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, NW, Suite 11,050, Washington, D.C. 20530-0001, within 60 days of your receipt of this letter. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." In the event you are dissatisfied with the results of any such appeal, judicial review will thereafter be available to you in the United States District Court for the judicial district in which you reside or have your principal place of business, or in the District of Columbia.

Sincerely,

**WILLIAM E. BORDLEY**
**Associate General Counsel/FOIPA Officer**
**Office of General Counsel**

Enclosures

August 13, 2007

Anthony A. Lemay
Reg, No. 18194-058
USP, Big Sandy
Box 2068
1197 Airport Road
Inez, KY 41224

Re:     **Freedom of Information/Privacy Act Request
No. 2006USMS9935; Subject: Self**

Dear Mr. Lemay:

The U.S. Marshals Service is making a supplemental disclosure to you of one page document containing information previously inadvertently withheld from disclosure to you with our release of December 6, 2006.

Information being released to you consist of the name of law enforcement officer contained on a public court document.

Appeal procedures are not contained in this response as this matter is in litigation.

Sincerely,

WILLIAM E. BORDLEY
Associate General Counsel/FOIPA Officer
Office of General Counsel

Enclosure

cc:     AUSA Michelle Johnson
District of Columbia



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

ANTHONY ALLEN LEMAY,                                )
                                                    )
                    Plaintiff,                      )
                                                    )
        v.                                          ) Civil Action No.: 07-1082 (RJL)
                                                    )
                                                    )
                                                    )
BUREAU OF ALCOHOL, TOBACCO,                         )
FIREARMS & EXPLOSIVES, et al.,                      )
                                                    )
                    Defendants.                     )
                                                    )
_____            )

**THE FOUR REMAINING FEDERAL DEFENDANTS' STATEMENT**
**OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to LCvR 56.1 and 7(h), the remaining four federal defendants,[1] the Federal

Bureau of Investigation ("FBI"), the Federal Bureau of Prisons ("BOP"), the Internal Revenue

Service ("IRS") and the United States Marshals Service ("USMS") hereby file their statement of

material facts as to which there is no genuine issue.

**Requests Submitted to FBI**

    **Request to FBI Headquarters**

1.      By letter dated August 23, 2006, plaintiff submitted a FOIA/PA request to the

FBI's Headquarters ("FBIHQ") seeking "any and all documents, records, and information . . .

that is in any way connected to, or even remotely in reference to my name or the subject matter

_____

[1]On September 20, 2007, six of the ten federal defendants filed their motion to dismiss or, in the alternative, for summary judgment. These defendants included the Bureau of Alcohol, Tobacco, Firearms and Explosives; the Drug Enforcement Administration; the Criminal Division of the United States Department of Justice; the United States Postal Service; the United States Department of Homeland Security; and the Executive Office for United States Attorneys. See Docket Entry No. 10.

briefly described below: ALL RECORDS."  Exhibit ("Ex.") 1, Declaration of David M. Hardy

("Hardy Decl.") ¶ 5; Ex. A (Plaintiff's FOIA request dated August 23, 2006).  Plaintiff instructed

that a search for documents should include the FBI's "Central Office and all Field Offices in

North Carolina.  Search all See Reference Files.  Search the I Files also.  Also search all field

offices in Florida."  Id.  Plaintiff indicated that he was willing to pay all reasonable search and

reproduction fees and furnished a declaration of identity.  Id.

2.        By letter dated September 19, 2006, FBIHQ advised plaintiff that a search of the

automated indices to the Central Records System ("CRS") at FBIHQ located no main files

responsive to plaintiff's FOIA/PA request on himself, Request Number 1058606-000.  Id. ¶ 6;

Ex. B (Letter to plaintiff dated September 19, 2006).  This letter also advised plaintiff of his right

to file an administrative appeal to the DOJ, Office of Information and Privacy ("OIP").  Id.

**Request Submitted to FBI's Charlotte Field Office**

3.        By letter dated September 8, 2006, addressed to the FBI in Ashville (sic), North

Carolina, a resident agency[2] of the Charlotte Field Office ("CEFO"), plaintiff requested "any and

all documents, records and information . . . that is in any way connected to, or even remotely in

reference to my name . . . ."  Id. ¶ 7; see also Ex. C (Plaintiff's FOIA Request dated September 8,

2006).  Plaintiff also advised that he was willing to pay all reasonable search and reproduction

fees and provided a declaration of identity.  Id.

4.        By letter dated October 18, 2006, the FBIHQ advised plaintiff that a search of the

---

[2]Along with the 56 field offices centrally located in major metropolitan areas across the
United States and Puerto Rico, the FBI maintains about 400 resident agencies in smaller cities
and towns across the nation.  Hardy Decl. ¶ 7 & n.2.  In this case, Charlotte is the field office and
Asheville is a resident agency of that field office.  Id.

CRS at the CEFO located no main files responsive to his FOIA/PA request (Request Number 1058606-001).[3]  Id. ¶ 8; Ex. D (Letter to plaintiff dated October 18, 2006).  The FBI advised plaintiff of his right to file an administrative appeal to the DOJ/OIP.  Id.

5.     By letter dated November 3, 2006, FBIHQ again advised plaintiff that a search of the CRS at the CEFO located no main files responsive to his FOIA/PA request.  Id. ¶ 9; Ex. E (Letter to plaintiff dated November 3, 2006).  This second response to plaintiff's CEFO request was assigned a new FOIA/PA Request Number 1061951-000.  Id.; Hardy Decl. ¶ 9.  Plaintiff was also advised of his right to file an administrative appeal to the DOJ/OIP.  Id.

6.     In preparing its declaration for submission to the Court, FBIHQ contacted OIP to determine if it had received any appeals from plaintiff.  Hardy Decl. ¶ 10.  OIP advised that it has no record of plaintiff filing any administrative appeal stemming from FBIHQ's response letters to plaintiff dated September 19, 2006, October 18, 2006, and November 3, 2006.  Id.

**Request Submitted to Federal Bureau of Prisons**

7.     Plaintiff is incarcerated at the United States Penitentiary ("USP") in Big Sandy, Kentucky.  Ex. 2, Declaration of Sharon Massey ("Massey Decl.") ¶ 3.  Plaintiff was sentenced in the United States District Court for the Western District of North Carolina to a life sentence for violation of 18 U.S.C. §§ 841 and 846, "Conspiracy to Possess with Intent to Distribute Cocaine Base."  Id.; Ex. A (Public Information Inmate SENTRY printout).

---

[3]The "001" designation indicates that plaintiff's prior request was administratively closed and re-opened when his subsequent request was received.  Hardy Decl. ¶ 8 & n.3.  This was an error, as the field office request (actually made to the Asheville resident agency) should have been given a new FOI/PA Request Number.  Id.  The error was corrected with the letter of November 3, 2006.  Id.  In summary, there are only two requests at issue, plaintiff's request to FBIHQ dated August 23, 2006, and his request to the Asheville Resident Agency dated September 7, 2006, which was treated as a CEFO request.  Id.

**FOIA REQUEST 2006-10257**

8.      On September 6, 2006, the Freedom of Information Division of the Federal

Bureau of Prisons, Central Office, Washington, DC, received a Freedom of Information Act

("FOIA") letter received from plaintiff.  Massey Decl. ¶ 4; Ex. B (Plaintiff's FOIA Request

dated August 24, 2006).  In this request plaintiff sought "any and all documents, records, and

information any way connected to, related to, or even remotely in reference to my name . . . ."

Id.

9.      The Central Office FOIA/PA section forwarded the request to CLC Lexington,

and it was received on or about September 15, 2006, and forwarded to USP Big Sandy.  Id. ¶ 5;

Ex. C (Memorandum addressed to Legal Liaison, USP Big Sandy).

10.     Plaintiff's FOIA request sought "All records search the USP Big Sandy, SIS[4],

SIA[5], and FOIA Exempt Files[6], Central File and ISM Files[7]."  Ex. B.

11.     On September 19, 2006, CLC Lexington sent plaintiff a letter acknowledging the

---

[4]SIS stands for "Special Investigative Services."  Massey Decl. ¶ 6 & n.1.  This
department handles all security investigations related to inmate assaults, gambling, drugs,
contraband, sexual assaults, extortion, escape plots, and continued criminal activities.  Id.  The
department also works as a liasion with state and federal law enforcement agencies.  Id.

[5]SIA stands for "Special Investigative Agent."  Massey Decl. ¶ 6 & n.2.  The SIA is the
head of the SIS Department and handles SIS duties as well as issues related to employee
misconduct or criminal activity.  Id.  The SIA works with BOP's Office of Internal Affairs,
Office of Inspector General, and the Federal Bureau of Investigation.  Id.

[6]FOIA Exempt Section of the Central File refers to a section in an inmate's Central File
which holds documents considered by the BOP to be too dangerous for an inmate to possess or
review.  Massey Decl. ¶ 6 & n.3.  The documents may contain separatees, gang associations,
cooperation with staff, criminal conduct, etc.  Id.

[7]ISM stands for the "Inmate Systems Department."  Massey Decl. ¶ 6 & n.4.  ISM
handles inmate sentence computations and possesses an inmate's Judgment & Commitment
Order(s), as well as any state or federal detainers.  Id.

receipt of his request.  Massey Decl. ¶ 8; Ex. D (Letter to plaintiff dated September 19, 2006).

The letter also explained the perimeters of plaintiff's request.  Id.  CLC Lexington did not

receive a response to this letter and proceeded to search for records responsive to plaintiff's

request based upon the perimeters set forth in the letter.  Massey Decl. ¶ 8.  Because plaintiff's

request sought access to his inmate Central File, the letter explained that his file was available

for the inmate to review at any time with his Unit Team and an inmate may seek copies of the

documents through his Unit Team.  Massey Decl.  ¶ 10; Ex. D.

        12.      In a letter dated September 22, 2006, CLC Lexington responded to plaintiff's

FOIA request, no. 2006-10257.  Id. ¶ 9.  The response indicated that plaintiff's request had

sought "a copy of the FOI exempt portion of your inmate central file, Judgement & Commitment

file, and any SIS/SIA files regarding yourself."  Ex. E (Letter to plaintiff dated September 22,

2006).  The letter informed plaintiff that CLC Lexington had located 40 pages responsive to

plaintiff's request.  Id.  Of the 40 pages, 13 pages were being released in full; 19 pages were

withheld in their entirety; and the remaining 8 pages were being partially released.  Id.  The

documents that were fully released to plaintiff are attached as Exhibit F to the Massey

Declaration.  CLC has received no information relating to any appeal filed by plaintiff with the

Department of Justice Office of Information and Privacy.  Massey Decl.  ¶ 12.

**Partially Released Documents**

        13.      CLC Lexington partially released 8 pages to plaintiff.  Massey Decl. ¶ 14.  Those

 redacted pages, with excisions, are attached as Exhibit G to the Massey Declaration.

        14.      One page entitled "Individual Custody and Detention Report USM (129) was

redacted to protect information related to plaintiff's "Special Handling Code."  Id. ¶ 17; Ex. F.

The redactions were made pursuant to Title 5, United States Code, Section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes, which could endanger the lives or physical safety of an individual.  Id. ¶ 18.  This redaction was also made pursuant to 5 U.S.C. 552(b)(7)(C), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.  Id. ¶ 19.

15.    The "Special Handling Remarks" contained the name of separatees from the plaintiff and security concerns for the United States Marshals Service.  Id. ¶ 20.[8]

16.    28 U.S.C. § 4042 vests the BOP, under the direction of the Attorney General, with the management and regulation of all federal penal and correctional institutions, and the responsibility of maintaining them in a safe and secure manner.  Id. ¶ 26.  In order to carry out this critical mission, the BOP must collect and maintain information concerning inmates that could impact the safe and secure operation of BOP facilities, information such as that at issue in this case.  Id.

17.    In the day-to-day operation of a correctional institution, or during the course of an investigation, BOP staff discover information that could affect the safety and security of the

_____

[8]28 C.F.R. § 524.72(f) provides that an inmate may be classified as a separatee based on several factors, including testimony provided by or about an individual, and whether the inmate has exhibited aggressive or intimidating behavior towards other specific individuals, either in the community, or in the institution.  Separation may also be appropriate where an inmate has provided authorities with information concerning the unauthorized or illegal activities of others, or, absent any identifiable threat, where a request is made by the federal judiciary or the United States Attorney.  Id.  Inmates are only notified that they have a classification of "separation"; they are not told from whom they are being separated, why they are being separated, or (if outside enforcement requested the separation) who requested the separation.  Massey Decl. ¶ 21 & n.5.

6

institution.  Id. ¶ 22.  This information may include, but is not limited to, the fact that two inmates were involved in a fight; a threat by one inmate to another; misconduct on the part of another inmate, which may become known; and self-reports by inmates that he has had conflicts in the past with another inmate (if this information can be verified, then staff will separate the inmates).  Id.

18.    In addition, while preparing for and prosecuting a criminal case, the Assistant United States Attorney will often become aware of information which can be valuable to law enforcement agencies who have the responsibility for the care and custody of these individuals, both pre-sentence and post-sentence.  Id. ¶ 23.  If these individuals are then incarcerated in the BOP, the Assistant United States Attorney provides information to the BOP regarding the need to separate certain individuals.  Id.  Inmates may need to be separated for many reasons, i.e., because one inmate testified against another which resulted in the inmate's conviction; the inmates could have been co-conspirators in planning an escape from prison or in the murder of a witness; or the inmates could have been involved in a fight while in jail together.  Id.

19.    The information gathered concerning plaintiff's separations are critical to the safe and orderly running of BOP institutions, to the safety of the inmates involved, and in some instances, to the safety of members of the public.  Id. ¶ 24.

20.    If inmates have been co-conspirators in the past, the BOP's possession of this information permits BOP to separate the inmates, and thus avoid further collusion on their part.  Id. ¶ 25.  This separation could protect the safety of not only BOP staff and inmates, but individuals in the community who provided information to law enforcement personnel or testified at trial.  Id. ¶ 25.

21.     The BOP is very careful not to release the names and identification of inmate separatees to other inmates or the general public.  Id. ¶ 27.  Such a release presents grave security concerns in the event inmates or associates of inmates obtain these separation concerns.  Id.  Release of this information creates a risk for the separatees and staff who may be involved if an altercation occurs.  Id.

22.     Two pages entitled "CIM Clearance and Separatee Data" were redacted pursuant to 5 U.S.C. section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of individuals.  Id. ¶¶ 28-29.  Redactions were also made pursuant to 5 U.S.C. section 552(b)(7)(C) which exempts from disclosure records or information compiled for law enforcement purposes which could constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.  Id. ¶ 30.  These redactions were made in accordance with the rationale set forth in paragraphs 15-21.  See Massey Decl. ¶¶ 28-35.

23.     Five pages entitled "Visitor Information" were redacted to exclude the legal name, date of birth, address, telephone number, race and sex, United States citizenship, social security number, alien registration number, passport numbers, relationship, criminal background, probation, correspondence with inmate and driver's license information.  Id. ¶¶ 36-37; 45-46; 49-50; 53-54; 57-58;  Ex. G.  These redactions were made pursuant to 5 U.S.C. § 552(b)(7)(C), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.  Id. ¶ 38, 47, 51, 55, 59.

24.     As a law enforcement agency within the Department of Justice, all visitors to the

BOP must complete this visitor information form prior to approval.  Id.  ¶¶ 39-40.  The form permits/authorizes the BOP to conduct a background investigation of the individual to determine whether the individual is appropriate to be approved for visiting within the BOP visiting regulations and the secure confines of a federal prison.  Id. ¶ 41.  To conduct this background investigation, BOP requires the individual to provide personal/private information.  Id. ¶ 42. The BOP has an obligation to the person seeking visitation to insure that their name, addresses, social security numbers and other personal data is held private.  Id. ¶ 43.  Release of the information to the prisoner places the person at risk for identity theft, fraud, extortion, or violence if the visitors' names and personal information are released to a prisoner, or if that information is lost by the inmate and released to the general inmate population.  Id. ¶ 44.

**Pages Withheld in Their Entirety**

25.    Nineteen pages were withheld in their entirety.  Id. ¶ 11.

26.    One page entitled "CIM Case Information Summary" was withheld.  Id. ¶ 62. This document contains information related to plaintiff's separatees.  Id.; see also id. ¶ 15 & n.8. This page was withheld pursuant to 5 U.S.C. section 552(b)(7)(C), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.  Id. ¶ 63.  The page was also withheld pursuant to 5 U.S.C. section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.  Id. ¶ 64.  The page was reviewed to see if certain information was excised whether the remaining portion of the page could be released; however, the review determined that the page cannot be reasonably and meaningfully

segregated.  Id. ¶ 65.  The rationale for withholding this information is set forth above, id. ¶¶ 17-21.

27.     One page consisting of an electronic message from the plaintiff's Unit Team to the U.S. Attorney's office containing a list of plaintiff's separatees was withheld.  Id. ¶ 67.  This page was withheld pursuant to 5 U.S.C. section 552(b)(7)(C) and 5 U.S.C. section 552(b)(7)(F).  Id. ¶¶ 68-69.  The rationale for withholding this page is set forth above, id. ¶¶ 17-21.  The page was reviewed to determine if it could be segregated, however this review determined that the page cannot be reasonably and meaningfully segregated.  Id. ¶ 70.

28.     Two pages consisting of electronic messages from two BOP case management coordinators, which contain a list of plaintiff's separatees, was withheld pursuant to 5 U.S.C. section 552(b)(7)(C) and 5 U.S.C. 552(b)(7)(F).  Id. ¶¶ 77-79; 82-84.  The rationale for withholding these pages has been set forth above, see id. ¶¶ 17-21.  Review determined that the pages could not be reasonably and meaningfully segregated.  Id. ¶¶ 80, 85.

29.     Six pages of NCIC reports, which contain the social security numbers of people requesting to be placed on the plaintiff's visiting list, was withheld.  Id. ¶ 87.  These pages were withheld pursuant to 5 U.S.C. section 552(b)(7)(C), which exempts from disclosure records or information complied for law enforcement purposes which would constitute a clearly unwarranted invasion of privacy concerning other individuals.  Id. ¶ 89.  The justification for withholding these pages has been set forth above, see id. ¶ 24.  These pages were reviewed to determine if certain information was excised whether the remaining portion of any page could be released.  Id. ¶ 88.  This review determined that the pages cannot reasonably and meaningfully be segregated.  Id.

30.     One page of handwritten notes concerning one of plaintiff's visitors containing the name, date of birth, and criminal records of the visitor was withheld.  Id. ¶ 91.  This page was withheld pursuant to 5 U.S.C. section 552(b)(7)(C), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.  Id. ¶ 93.  The rationale for withholding this information has been set forth above, see id. ¶ 24.  The page was reviewed and it was determined that the information contained therein could not be reasonably and meaningfully segregated.  Id. ¶ 92.

31.     Four pages of NCIC reports containing the social security numbers of people requesting to be placed on plaintiff's visiting list, as well as the criminal convictions associated with the social security numbers, were withheld.  Id. ¶ 95.  These pages were withheld pursuant to 5 U.S.C. 552(b)(7)(C), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.  Id. ¶ 97.  The rationale set forth in paragraph 24 justifies the withholding of these pages.  Id. ¶ 98.  These pages were reviewed to determine if certain information was excised whether the remaining portion of any pages could be released.  Id. ¶ 96. The review determined that these pages cannot reasonably and meaningfully be segregated.  Id.

32.     One page consisting of plaintiff's Judgment and Commitment Order, which was entitled "Statement of Reasons" and stated "not for public disclosure" was withheld.  Id. ¶ 99. The page was withheld pursuant to 5 U.S.C. section 552(b)(7)(F), which provides for the withholding of information or records compiled for law enforcement purposes which could endanger the lives or physical safety of individuals.  Id. ¶ 100.  BOP Program Statement

1351.05, dated September 19, 2002, entitled "Release of Information," prohibits inmates from obtaining and possessing photocopies of their Pre-Sentence Reports (PSR) and Statement of Reasons (SOR) from their judgments in a criminal case. Id. ¶ 101; Ex. H (Program Statement 1351.05, Summary of Changes, and page 15). The purpose of this prohibition is to protect inmates from being coerced by other inmates to produce their PSRs and SORs for illicit purposes. Id. ¶ 102. Inmates will be permitted to review their PSRs and SORs, but cannot obtain or possess photocopies. Id. The page was reviewed to determine if it could be reasonably and meaningfully be segregated, however, this review determined that such segregation was not possible. Id. ¶ 103.

33.     One page consisting of plaintiff's Judgment and Commitment Order, which was entitled, "Confidential Not for Public Disclosure" and contains plaintiff's name, home address, social security, and date of birth, was withheld. Id. ¶ 104. This page was withheld pursuant to 5 U.S.C. section 552(b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of others. Id. ¶ 105. BOP Program Statement, 1311.05, dated September 19, 2002, and entitled "Release of Information" prohibits inmates from obtaining and possessing copies of their PSRs and SORs from their judgments in criminal cases. Id. ¶ 106; see also Ex. H. The purpose of this prohibition is explained above, see id. ¶ 32. This page was reviewed and it was determined that it could not be reasonably and meaningfully segregated. Id. ¶ 108.

34.     One page consisting of the AIMS system printout, entitled "Nicknames" was withheld. Id. ¶ 109. This printout is used to track inmate nicknames while housed in BOP. Id. The page was withheld pursuant to 5 U.S.C. section 552(b)(7)(F), which provides for the

withholding of information or records compiled for law enforcement purposes which could

endanger the lives or physical safety of individuals. Id. ¶ 110. The page was also withheld

pursuant to 5 U.S.C. section 552(b)(5), which exempts information intended for staff only, the

disclosure of which would tend to inhibit frank communication between prison officials, or

correspondence that is speculative or deliberative in nature. Id. ¶ 111. This exemption protects

information which would not be available by law to a party other than an agency in litigation

with that agency. Id. This form/data system permits SIS staff to match an inmate's real name

with his prison or "street" nickname(s). Id. ¶ 112. This assists the BOP and law enforcement in

identifying specific inmates during the monitoring of inmate mail, telephone calls, visitation or

statements made in the general compound. Id. Inmates often use nicknames within prison as a

means of identification between other inmates and the community while hiding their true

identities from BOP staff or law enforcement. Id. Under the cover of nicknames, inmates

attempt to become involved in illegal or gang related activities within and outside the prison

without detection. Id. The disclosure of this information to plaintiff or to any inmate

jeopardizes the BOP's ability to monitor inmate activities since the disclosure of information

will inform the inmate that the BOP has the nickname that the inmates use. Id. ¶ 113.

Disclosure would frustrate the ability to monitor inmates and insure the safety of the public and

the prison. Id. The page was reviewed to determine if it could be reasonably and meaningfully

segregated; however, review determined that it could not be so segregated.

**Request Submitted to Internal Revenue Service**

_____35.    In a request dated August 24, 2006, plaintiff sought "personal tax records" for the

years 1990 to the present. Ex. 3, Documents Relating to IRS Request, Ex. A (Plaintiff's FOIA

Request).  Plaintiff indicated that he was an "OTHER" requester and asked that a search include the "Criminal Investigation" section and be limited to "North Carolina only."  Id.

36.    In a letter dated September 21, 2006, the IRS informed plaintiff that additional information was required before his request could be processed.  Ex. 3, Ex. B (Letter to plaintiff dated September 21, 2006).

37.    Plaintiff filed a FOIA Appeal dated 12/16/06.  Ex. 3, Ex. C (FOIA Appeal dated 12/16/06).  In this appeal, plaintiff indicated that the agency had made a "blanket" denial of the release of any records.  Id.  Plaintiff also indicated that he "did file a proper request."  Id.

38.    In a letter dated March 5, 2007, plaintiff was informed that his appeal was not timely filed within the 35 day timeframe set forth in 26 C.F.R. section 601.702(c)(10)(I).  Ex. 3, Ex. D (Letter to plaintiff dated March 5, 2007).  Furthermore, plaintiff was informed that his appeal failed to meet the minimum requirements of IRS regulation section 601.702(c)(10)(ii) that requires such an appeal to "reasonably describe the records requested to which the appeal pertains . . . ."  Id.  Furthermore, because there was no record of plaintiff's request being denied, plaintiff's appeal was determined to be improper.  Id.

**Request Submitted to the U.S. Marshals Service**

39.    Plaintiff submitted a request to United States Marshals Service ("USMS") headquarters dated August 23, 2006, and received in the Office of General Counsel ("OGC") on September 18, 2006, requesting information pertaining to himself.  Ex. 4, Declaration of William E. Bordley ("Bordley Decl.") ¶ 2; Ex. A (Plaintiff's FOIA Request dated August 23, 2006).

40.    By letter dated October 5, 2006, the USMS advised plaintiff that his request had been received and that USMS had commenced a search for records.  Id. ¶ 3; Ex. B (Letter to

plaintiff dated October 5, 2006).

41.    The USMS conducted a search for records regarding plaintiff using his name and personal identifiers (e.g., date and place of birth, social security number, and prisoner registration number).  Id. ¶ 4.  The search was conducted in the USMS offices plaintiff identified in his request, i.e., all districts in North Carolina and all districts in Florida, which encompassed the Eastern, Middle and Western Districts of North Carolina, and the Middle, Northern, and Southern Districts of Florida.  Id.; see also Ex. A.  These offices were provided with plaintiff's date and place of birth, social security number, and prisoner number, which had been furnished by plaintiff.  Id.

42.    The search for plaintiff's records was conducted by the USMS FOI/PA liaisons in the above districts.  Id. ¶ 5.  The FOI/PA liaisons in USMS districts routinely coordinate and/or conduct document searches in their respective district office in response to FOIA and PA requests.  Id.  The FOI/PA liaisons are knowledgeable about the records and files maintained by their particular offices.  Id.

43.    The USMS systems of records routinely encompassed by a search for prisoner records is the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007.  Id. ¶ 6.  These systems of records are searched by an individual's name and/or personal identifier.  Id.  The WIN and PPM/PTS electronic records revealed that plaintiff was arrested following the issuance of a warrant in the Western District of North Carolina, Asheville Division, and housed in the Western District of North Carolina.  Id.  There are no USMS records indicating that plaintiff was ever investigated, arrested, or housed by the USMS

15

in Florida, and consequently, no records pertaining to plaintiff, other than those described below, were located by the FOI/PA liaisons in the Middle, Northern, and Southern Districts of Florida. Id.

44.    Documents regarding plaintiff were located by the USMS office in the Western District of North Carolina in the PPM/PTS and WIN systems of records. Id. ¶ 7. These systems assist the USMS in carrying out its statutory law enforcement responsibilities related to receiving, processing, transporting, and maintaining custody of federal prisoners from the time of their arrest by a U.S. Marshal or their remand to a U.S. Marshal by the court until the prisoner is committed by the court to the Attorney General for service of sentence, otherwise released from custody or returned to custody of the U.S. Parole Commission or Bureau of Prisons, the execution of federal arrest warrants, and the investigation of fugitive matters. See Rule 4, Federal Rules of Criminal Procedure; 18 U.S.C. § 4086; 28 U.S.C. § 566, and 28 C.F.R. § 0.111(a), (e), (j), (k), (q). Id. As such, these systems of records are exempt from access pursuant to the Privacy Act, pursuant to 5 U.S.C. § 552a(j)(2). See 28 C.F.R. § 16.101(a), (g), (q). Id. To ensure maximum access, plaintiff's request was also processed pursuant to the FOIA. Id. As a result of these systems of records searches by plaintiff's name and/or personal identifier, eighty-three (83) pages of material indexed to plaintiff were located in the USMS district office. Id.

45.    By letter dated December 6, 2006, the USMS responded to plaintiff's request, informing him that a search of its files had resulted in 83 pages being located. Id. ¶ 8; Ex. C (Letter to plaintiff dated December 6, 2006). Of this material, the USMS released seventy-eight (78) pages to plaintiff; 48 pages were released in their entirety; three pages were referred to the BOP; and two pages were referred to the Executive Office for U.S. Attorneys ("EOUSA") for

their disclosure determinations and direct responses to plaintiff in accordance with 28 C.F.R. §

16.4(c)(2).  Id. ¶ 8.  The remaining thirty (30) pages were released with information excised and

withheld pursuant to exemptions 2 and 7(C) of the FOIA, 5 U.S.C. § 552(b)(2), and b(7)(C).  Id.

Plaintiff was informed of his right to appeal the USMS' release to the Department of Justice's

Office of Information and Privacy ("OIP").  Id.

46.    By letter dated August 13, 2007, the USMS made a supplemental disclosure to

plaintiff.  Id. ¶ 9; Ex. D (Letter to plaintiff dated August 13, 2007).  This supplemental disclosure

released in its entirety one document which had been released with a deletion in the December 6,

2006, disclosure letter.  Id.  The deletion in the document (a public record document) was

inadvertently made in the December 6, 2006 release.  Id.  Accordingly, the August 13, 2007

supplemental disclosure corrected this error and released this one document in its entirety.  Id.

Thus, forty-nine (49) pages have been released in their entirety to plaintiff, and twenty-nine (29)

pages have been released with deletions.  Id.

47.    On August 13, 2007, the USMS FOI/PA Specialist, Sharon Keys, contacted the

OIP to determine if plaintiff had filed an administrative appeal regarding the USMS' response to

plaintiff's FOIA request.  Id. ¶ 10.  OIP had no record of receiving any appeal from plaintiff.  Id.

**Exemptions and Basis for Withholdings**

**Exemption 2**

47.    Exemption 2 permits an agency to withhold information related solely to internal

personnel rules and practices of an agency.  5 U.S.C. § 552(b)(2).  This exemption was applied

to withhold information that would identify internal FedEx Air Bill account numbers assigned to

USMS district offices to facilitate the billing and shipment of a prisoner's personal property.  Ex.

4, Bordley Decl. ¶ 11.  Disclosure of this information could allow individuals unauthorized

access to and compromise the prisoner property account system and allow the public to

circumvent procedures established for the billing and shipment of prisoner personal property and

would present an opportunity for misuse and fraud.  Id.  These account numbers are used purely

for internal USMS billing purposes and do not affect members of the public.  Id.

> **Exemption 7(C)**

48.     Exemption 7(C) permits an agency to withhold records or information compiled

for law enforcement purposes to the extent that production could reasonably be expected to

constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(7)(C).  This

exemption was applied to withhold the name of federal and non-federal law enforcement officers

and other government employees.  Ex. 4, Bordley Decl. ¶ 12.  Plaintiff has no public interest

warranting disclosure of the names of these individuals, nor does the USMS believe that public

disclosure of this information is warranted.  Id.  To the contrary, release of this information

could subject these individuals to unwarranted public attention, harassment, and annoyance and

would thereby impair the effectiveness of these employees in carrying out their official duties

and potentially cause unwarranted attention to them in their private lives, as well as possibly

posing a danger to their lives or physical safety.  Id.  Absent a legitimate public interest,

disclosure could reasonably be expected to constitute an unwarranted invasion of personal

privacy.  Id.  In considering whether the public interest in disclosure outweighed the individual's

interest in privacy, the USMS determined that no legitimate interest would be served by

disclosure of this information.  Id.

49.     Exemption 7(C) was also applied to withhold information regarding third party

individuals, including prisoners other than plaintiff.  Id. ¶ 13.  In reaching the decision to

withhold personally identifiable information from documents released to plaintiff, the USMS

considered whether or not there was a legitimate public interest in disclosure that would

outweigh the individual's privacy interest in non-disclosure.  Id.  However, it is not readily

apparent how information identifiable to prisoners other than plaintiff and other private

individuals would satisfy any legitimate public need for information about the workings of our

criminal justice system and the USMS could discern no legitimate public interest in the

disclosure of this information. Id.  Release of this identifying information could expose the

individuals to unwarranted public attention, embarrassment, harassment, and annoyance for

being associated with an official criminal law enforcement matter.  Id.  Further plaintiff provides

no explanation regarding how such disclosure would serve the basic purpose of FOIA, i.e., to

shed light on an agency's performance of its statutory duties, nor can the USMS discern any

public interest in such disclosure that would outweigh the privacy rights of the affected

individuals.  Id.

     50.     In summary, a total of eighty-three (83) pages were located that were indexed to

plaintiff's name. Id. ¶ 15.  Of this material, the USMS released seventy-eight (78) pages to

plaintiff, of which forty-nine (49) pages have now been released in their entirety, and twenty-

nine (29) pages released with information redacted and withheld pursuant to Exemptions 2 and

7(c) as fully set forth in the Bordley declaration.  Id.  The remaining five pages contained

information that originated with the EOUSA (2 pages) and the BOP (3 pages) and have been

referred to those respective agencies for their disclosure determinations and direct responses to

plaintiff.  Id.  All non-exempt portions of USMS documents pertaining to plaintiff have been

segregated and released to him.  Id. ¶ 16.


Respectfully submitted,


/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

/s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139


COUNSEL FOR DEFENDANTS

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

ANTHONY ALLEN LEMAY,            )
                                         )
           Plaintiff,              )
                                         )
      v.                         )  Civil Action No.: 07-1082 (RJL)
                                         )
                                         )
                                         )
BUREAU OF ALCOHOL, TOBACCO,    )
FIREARMS & EXPLOSIVES, <u>et al.</u>,      )
                                         )
           Defendants.          )
                                       )
_____)

## <u>PROPOSED ORDER</u>

      This matter having come before the Court on the Motion of the Four Remaining Federal

Defendants for Dismissal, or Alternatively, for Summary Judgment, plaintiff's opposition, if any,

and defendants' reply, if any, it is hereby

      **ORDERED** that the Four Remaining Federal Defendants' Motion for Dismissal, or

Alternatively, for Summary Judgment, is hereby **GRANTED**.  And it is further

      **ORDERED** that plaintiff's complaint is dismissed with prejudice as it concerns the

following defendants: the Federal Bureau of Investigation; the Federal Bureau of Prisons; the

Internal Revenue Service; and the United States Marshals Service.

      **SO ORDERED** on this _____ day of _____, 200__.


                         _____
                         RICHARD J. LEON
                         UNITED STATES DISTRICT JUDGE